DAVID S. STACY, ADMINISTRATOR OF CHARLES S. LEE, PLAINTIFF IN ERROR, *v.* J. B. THRASHER, FOR THE USE OF WILLIAM SELLERS, DEFENDANT IN ERROR.

An action of debt will not lie against an administrator, in one of these United States, on a judgment obtained against a different administrator of the same intestate, appointed under the authority of another State.
The doctrine of privity examined.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Eastern District of Louisiana.

The history of the case is this.

In April, 1836, Charles S. Lee, a resident of the county of Claiborne and State of Mississippi, was sued in the county court of Claiborne, by Christopher Dart and William Gardner, who called themselves late merchants and copartners trading under the style and firm of Dart & Co., and stated the suit to be for the use of Christopher Dart.

It is not necessary to state the cause of action, or trace the progress of the suit minutely.

Lee appeared to the suit.

In December, 1836, his death was suggested.

In July, 1837, Ann Lee took out letters of administration upon the estate of Charles S. Lee, under the authority of the probate court of Claiborne county.

In September, 1837, the suit was revived against the administratrix, by a *scire facias.*

In November, 1837, she appeared to the suit and pleaded the general issue.

On the 1st of December, 1838, the cause came on for trial, when the plaintiffs obtained a judgment for $6,080.99.

On the same day, viz. the 1st December, 1838, Christopher Dart, for whose use the judgment was entered, made an assignment of it to John B. Thrasher, of Port Gibson, the nominal defendant in error in the present case.

After this, however, a new trial was granted by the court of Claiborne county in the suit against Ann Lee, administratrix, which resulted in another judgment, for a different sum of money, in June, 1840.

Another new trial was granted, and in December, 1840, another judgment was rendered against the administratrix for $6,988.05.

Nothing further appears to have been done for some time. The next fact in the history of the case is, that David S. Stacy, the plaintiff in error in the present case, and a citizen of Louisiana, took out letters of administration upon the estate of Charles S. Lee, in the State of Louisiana. At what particular time these letters were taken out, the record does not show.

In January, 1844, John B. Thrasher, to whom the judgment in Mississippi had been assigned by Christopher Dart, as above stated, filed a petition in the Circuit Court of the United States for the Eastern District of Louisiana, against Stacy, the administrator of Charles S. Lee. Thrasher now stated himself to be suing for the use of William Sellers, and averred that Sellers and himself were both citizens of the State of Mississippi. The petitioner stated himself to be the legal owner, by transfer and assignment, of a judgment for $6,988.05, which judgment was final and definitive.

In February, 1844, Stacy appeared to the suit and filed the following exceptions and answer, which are according to the practice in Louisiana, and equivalent to a demurrer.

"David S. Stacy, a citizen of the State of Louisiana, residing in the parish of Concordia, administrator of the succession of Charles S. Lee, in the State of Louisiana, under the appointment and authority of the Court of Probates of the parish of Concordia aforesaid, being made defendant in the above-entitled suit, appears and pleads as follows, by way of exception: —

"1. That plaintiff in his petition does not allege or show that this honorable court has jurisdiction of this suit, as it is not therein alleged that Christopher Dart, who is declared to be the assignor of the judgment upon which this suit is brought, was either an alien or a citizen of another State than Louisiana, or

could have maintained this suit in this honorable court either against the appearer or the said Charles S. Lee.

"2. Appearer alleges that Christopher Dart and William Gardner, the alleged owners of the claim upon which the judgment was obtained in Mississippi, were citizens of Louisiana, and members of a commercial firm located in New Orleans, and could not have maintained this suit in this honorable court either against the said Lee or against this appearer, and that this court has no jurisdiction of this suit.

"3. That the said William Gardner, one of the joint owners of said claim, was a citizen of Louisiana, and that the said Dart & Gardner could not have maintained a suit upon said claim in this honorable court either against the said C. S. Lee or against this appearer.

"4. That the said C. Dart, under an assignment and transfer of said claim from the said Gardner, could not have maintained a suit thereon in this honorable court.

"5. Appearer further excepts and says, that this honorable court has no jurisdiction over successions in the State of Louisiana, nor over the settlement of said successions and the distributions of the proceeds among the creditors, nor over administrators and others appointed to administer them, nor of the establishment of claims for money against such successions; that the Court of Probate of this State have the sole and exclusive jurisdiction of all these matters; that no property belonging to a succession in the course of administration in the probate court, whose jurisdiction has attached over the subject-matter, can be taken, levied upon, or sold by process from the courts of the United States; nor can said probate courts be ousted or disseized of their said exclusive jurisdiction once obtained, nor the property withdrawn from their control by any other tribunal. That this has been the well-known and settled law of the State for the last twenty years, and that the said Dart & Gardner contracted in New Orleans, in Louisiana, under and in reference to this law, and are bound by it; appearer alleges that this honorable court, for the above reasons, has no jurisdiction in this suit, *ratione personæ*, nor *ratione materiæ*, but avers that the Court of Probates of the parish of Concordia has sole and exclusive jurisdiction thereof. Wherefore appearer prays that this suit may be dismissed at plaintiff's costs, &c.

"If all the above exceptions should be overruled, then appearer pleads that the plaintiff has neither alleged nor shown any cause of action against him whatever, nor any indebtedness to the plaintiff by the succession of C. S. Lee in the State of Louisiana.

"If the above exception should be also overruled, then defendant denies generally and specially each and every allegation in plaintiff's petition contained. Wherefore he prays that plaintiff's demand may be rejected with costs, and for general relief in the premises, &c.

(Signed,)    D. S. STACY, *Adm'or estate C. S. Lee.*"

On the 26th of February, 1844, Thrasher filed an amended petition, averring that Christopher Dart, the assignor of the judgment, was, at the time of the assignment, an alien, being a citizen of the republic of Texas, and resident therein, and that Charles S. Lee, at the time of said assignment and of his death, was a citizen of Louisiana.

On the 13th of March, 1844, the court overruled the exceptions, and on the 11th of April following gave the following final judgment.

"This cause came on for trial, and the law and the evidence being in favor of the plaintiff, it is ordered, adjudged, and decreed, that the defendant, David S. Stacy, as administrator of the estate of Charles S. Lee, be condemned to pay to the plaintiff, for the use of William Sellers, the sum of six thousand nine hundred and eighty-eight dollars and five cents, with eight per cent. interest thereon per annum from the first day of December, eighteen hundred and forty, until paid, and costs of suit. Judgment rendered April 11th, 1844. Judgment signed April 18th, 1844.

(Signed,)    J. McKINLEY."

From this decree, a writ of error brought the case up to this court.

The case was argued by *Mr. T. B. Barton*, for the plaintiff in error, and *Mr. Crittenden*, *Mr. Thrasher*, and *Mr. Henderson*, for the defendant in error.

*Mr. Barton*, for the plaintiff in error.

The great and important question which the record presents, and to which this argument will be confined, is that to which the last exception is directed.

The petition, with the other proceedings in Louisiana upon the judgment in Mississippi, are not distinguishable from an action of debt, brought under the same circumstances, upon a like judgment, in the courts of those States where the practice is according to the course of the common law. The petition is founded, as the action of debt would be, upon the judgment. The validity and effect of the judgment must be the same in

both kinds of proceedings. The case involves the question whether a judgment, rendered in one State against an administrator who has taken administration of the assets in that State, and within that jurisdiction, can be made the foundation of an action in another State against a different administrator, whose administration has been taken within the jurisdiction of the latter, of the assets within the latter jurisdiction.

There are some special circumstances in this record which arrest our attention in advancing to the discussion of the main point. Cases of this kind must always be open to remark, and entitled to grave consideration. The judgment rendered against the first administrator, which is made the foundation of a recovery against the administrator out of the assets in another jurisdiction, must be taken to have adjudged that the administrator against whom the judgment was rendered had assets to satisfy the debt. That administrator, in the proceedings against him, must have admitted, by his pleadings, that he had assets; and that will always be the case when he neglects (as was the case in Dart & Co. *v.* Lee's Administratrix in Mississippi) to plead *plene administravit ;* or, if assets have been denied by such plea, that issue must have been found against him. A general judgment, therefore, against an administrator, necessarily includes in it the adjudication of assets in the hands of that administrator to the amount of the judgment. According to the rigor of the common law, the judgment in that form would be absolutely conclusive against the defendant's administrator, and against the plaintiff and all others; and the only ulterior proceedings upon such judgment, if not satisfied, upon an execution to be levied *de bonis testatoris,* would be against that administrator for a *devastavit.* (2 Lomax on Executors, 391, sec. 8, and 451, sec. 21.)

Virginia, and perhaps others of the States, has mollified, in some respects, the rigorous conclusion of this common law rule, but without destroying it. In its most mitigated application to such a recovery, the judgment will be at least taken, until the contrary is shown by that defendant, as a judgment that the administrator had assets for the satisfaction of the recovery. For this reason, as well as for other reasons, it is certain that we shall find no case in the English authorities where a judgment has been recovered against one administrator, in which any recovery has been sought against another administrator, unless in cases of an administrator *de bonis non,* or unless in cases of special administrations, such as administrator *durante minore ætate,* &c. And, for the same reason, it is probable that no such cases can be found in any of the American authorities, even where the rules alluded to have been

mitigated. It will be found extremely difficult, within the jurisdiction where administration was granted, to conceive any case of that kind. The judgment, then, upon which the petitioner founds his recovery against the administrator in Louisiana, shows upon its face that assets for its satisfaction, in the State of Mississippi, were also adjudged. The very judgment, by showing that matter, an adjudged liability of a sufficiency of estate in Mississippi, shows an exoneration of assets elsewhere than in Mississippi, and that the Louisiana administrator ought not to be charged, by a double recovery, for that which has been already or can be recovered against another representative in Mississippi.

There is also another remark that may be made upon the proceedings in this case, — that the decision, if sustained, must lead to alarming mischiefs in the administration of assets which an intestate has left in two or more States. It seems, from the amended petition, that C. S. Lee, at the time of his death, was a citizen of Louisiana; that was his domicile, and consequently Ann Lee, in Mississippi, was a foreign administratrix. The bulk of an intestate's assets will almost always be found in the jurisdiction of his domicile. The proposition which is contended for to sustain this recovery goes to this extent, — that if an intestate in one State had died, leaving property of the most inconsiderable value in another State, making it necessary that there should be an administration in the latter, a plaintiff, by recovering a judgment against the latter, establishing a debt of the intestate, that judgment, as contended for by the defendant in error, would be conclusive upon the administrator and the assets, in the State of the domicile, at least so far as it established the indebtedness of the intestate. In vain might the domiciliary administrator attempt, in an action brought against him upon that judgment, to prove that the plaintiff had no shadow of claim against the intestate; he would be repelled, by force of the judgment, from any such defence.

Is it reasonable, that, in the international law of these States under the Constitution and acts of Congress, such ruinous stringency should be given to the judgment of one State in the courts of another? — that a judgment against the foreign administrator, who is regarded only as auxiliary or ancillary to the domiciliary administration, and who is in practice oftentimes, in some of the States, little more than a nominal administrator, shall conclude the primary domiciliary administrator, holding the main bulk of the assets, by establishing against him and against those assets the principal fact in the case, the indebtedness of the intestate, so that they can never be extricated from this rigid conclusiveness of the foreign judgment?

There is a further remark, that the petitioner seeks a recovery upon the Mississippi judgment against "a considerable estate, real and personal," left by the intestate in the State of Louisiana; estates of both descriptions, it would seem, are liable as assets in the hands, or under the control, of the administrator in that State. There is no principle in general jurisprudence, and particularly in the United States, better established, than that land can never be subjected to a foreign jurisdiction. (Story's Confl. of Laws, pages 436, 437, §§ 522, 523.)

To give to the judgments of one State validity and effect in the courts of another, is a wise provision under our system of government. It cannot, however, be overlooked, that to whatever extent force is allowed to them, out of the State which pronounced them, in the jurisdiction of another State, it operates as a restriction or compulsion upon this jurisdiction, making it subordinate to the jurisdiction of a foreign forum. The provision, therefore, which has been alluded to should be jealously guarded by the courts; and unless its application should be shown to be clearly reasonable, the application should be denied. It has before been intimated, that no authority can be found, certainly not in the English law, probably not in the American law, which can govern the precise case now under consideration.

Without attempting to disturb any doctrine heretofore established in regard to the conclusiveness of judgments, and the effect of the judgment of a court of one State, when sued upon or offered in evidence in the courts of another State, it is contended that that doctrine has never been extended to a case like the present, and that it would not be reasonable to give it such application. It is a principle incontrovertibly established in the English jurisprudence, in that of Louisiana (Benjamin and Slidell's Digest of Louisiana Laws, page 559, et seq.), and in all the other States, that "no one, in general, can be bound by a verdict or judgment, unless he be a party to the suit, or be in privity with the party, or possess the power of making himself a party. For (as has been well said) otherwise he has no power of cross-examining the witnesses, or of adducing evidence in support of his rights. He can have no attaint, nor can he challenge the inquest, or appeal (or have a writ of error on the judgment). In short, he is deprived of the means provided by the law for ascertaining the truth, and consequently it would be repugnant to the first principles of justice that he should be bound by the results of an inquiry to which he was altogether a stranger." (1 Stark. Law Ev. 217, 6th Am. ed.)

It is not pretended that the administrator in Louisiana was

a party to the proceedings in Mississippi, or could by any possible means have made himself a party to them. It is incumbent upon the defendant in error clearly to show, before the jurisdiction in Mississippi shall control that of Louisiana, that the administrator of the latter State was, in the proceedings in which judgment was recovered in the former, in privity with the defendant in that suit. The contrary has been distinctly laid down by Justice Story, in his learned treatise on the Conflict of Laws, $ 522. That is a direct authority upon the present case. It makes no difference that the judgment in the cases in Rawle, 431, to which he refers, was a judgment rendered in Barbadoes. The matter under consideration involves no discussion, as to the difference between the effect of a judgment when rendered in a State jurisdiction, and when rendered in a jurisdiction out of the United States. The point decided there was, that there was no privity between one administrator and another administrator of the same intestate, when both administrations have been granted by different jurisdictions entirely separate and independent of each other.

The jurisdiction of each State of this Union is sovereign and independent in granting letters of administration, as much so as that of any two foreign states. The grant, when made, invests the administrator under the authority of that State with the proprietorship of the effects of the intestate within that State, but, having no jurisdiction beyond its own limits, it can confer no property upon him out of those limits.

Each administrator, when several administrations are granted in several States, is made the owner of a distinct property, wholly unconnected with any other out of the State. The authority under which each derives his title is a separate sovereign power ; and it is exclusively by that authority, not by virtue of testamentary appointment of the dead, that they are invested with any interest or control in the respective estates ; and it is entirely to the authority from which their rights are alone derived that they are in any manner accountable. In some sense they may severally be said to be a representative of the deceased.

There would be no ground for asserting that these representatives in different States constitute one representative, as several executors under the same will, or administrators under the same jurisdiction, may constitute one executor or administrator, though the assets confided to each may be separated.

It is believed that this doctrine, here attempted to be presented, of the relation in which the separate administrators under different jurisdictions stand in these United States, has been universally recognized by the States except so far as by

statutory law (showing that the original principle was as here stated) the doctrine has been changed or modified. It would seem necessarily so, not only as regards the relation of the administrator, but as regards the rights of the executor as affecting the assets and the representative of the deceased, for he has no lien upon the fund in the hands of the representative as the *debtor*, but the person of the administrator, who is, in a measure, the officer or bailiff of the court appointing him, in respect of the assets which he has in his hands, is the debtor. (1 Lomax on Executors, 345; Ram. on Ass. 484.) What constitutes privity between one representative of a dead man and another representative depends upon no peculiar rules springing out of a practice of the probate court, in regard to the representatives of deceased persons, but is to be ascertained upon principles of the common law, as applicable to cases generally, of which a variety of illustrations will be found in the books, especially 1 Stark. Law Ev. 217, et. seq. Privity between one administrator and another does not depend upon, and cannot be created by, their being each of them the representative of the same intestate, though it be a duty in which they all unite. It has not been so regarded in the English law, which, until the 17th Car. 2, did not regard the administrator *de bonis non* in privity with an executor or administrator, to bring *scire facias* on the judgment which the executor, or administrator, had obtained. (See authorities, 1 Lom. Ex. 325.) So, if one brings several ejectments against several upon the same title, a verdict against one is not evidence against the rest, because the party against whom the verdict was had might be relieved against it, if it was not good, but the rest could not (1 Stark. Law Ev. 217); as the title under which all these defendants in ejectment claimed is the same, each of them, of course, must have held in privity to some one person, from whom all their titles were severally derived; nevertheless, that privity in one common title did not unite them in privity to each other.

The judgment, therefore, in Mississippi, against Ann Lee, administratrix of the assets of Charles S. Lee in Mississippi, could not bind the appellant, D. S. Stacy, administrator of the assets of C. S. Lee in Louisiana.

The rule excluding *res inter alios acta* as a ground of action, or as a bar in the pleadings, it is hardly necessary to remark, *extends with equal stringency to exclude such matter as evidence at the trial.* (1 Stark. Law Ev. 217; and 1 Greenl. Ev. § 522, et seq.)

The principle here contended for cannot be evaded by force of the statute of Mississippi, which seems, as is contended for,

to make the judgment recovered in Mississippi against Ann Lee, administratrix, have the effect of being a judgment recovered against Charles S. Lee, the intestate himself, because that suit was instituted against him in his lifetime. That statute enables the plaintiff to revive the suit pending against the intestate, and empowers the court to render judgment for or against such administrator, in the same manner as if the original party were in existence. (How. & Hutch. Dig. 584.) This statute can mean nothing more than in the strongest expressions to remove merely the impediment thrown in the way of the proceedings of the plaintiff by abatement. It did not mean, by strict adherence to the same manner as if the original party were in existence, to preclude the administratrix from pleading pleas peculiarly allowed to executors and administrators, — such as *plene administravit*, generally or specially, no assets, and the like ; or to preclude the plaintiff from taking a judgment against the administratrix ; and if so, the judgment could not be in the same manner as if the original party was in existence. If the legislature had intended that, it would have adopted a provision like that in the 17th Car. 2, c. 8, s. 1, where a party dies between verdict and judgment, directing that the judgment shall be entered as if both parties were living. (See 1 Lom. Ex. 324, 325.)

The judgment rendered in this very case shows that such has not been the interpretation given to that statute, for it is a judgment, not against the intestate, but against the administratrix. Whatever may be the interpretation to be put upon the statute, it is sufficient here to say, that the judgment taken was not in accordance with any directions that it should be rendered as if the party were living, but that was waived if the statute gave such power, and the plaintiff has taken a judgment against the administratrix ; and taking it in that manner, the plaintiff subjects himself to all the consequences of that form of judgment.

In conclusion, the plaintiff in error is not precluded from the grounds of error here attempted to be maintained by force of the 32d section of the Judiciary Act of 1789. That section was only intended to apply to proceedings in actions at common law ; not to proceedings by petition, according to the practice of Louisiana. Even if it did, the exception taken in the court below cannot but be regarded as tantamount to a demurrer according to the requisitions of that statute. That clause is a transcript of the provisions of 27th Eliz. c. 5, and 4th Anne, c. 16, for the purpose of curing mere defects of *form*, and requiring special demurrers, leaving matters of *substance* unaffected by its provisions, to be taken advantage of by general demurrer,

5 *

without setting down any special cause, or to be taken advantage of by errors in arrest of judgment, or by writ of error. (See Bac. Abr. *Pleas and Pleading;* Stephens on Pleading, 140.)

*Mr. Crittenden, Mr. Thrasher,* and *Mr. Henderson,* for the defendant in error, sustained the judgment of the court below upon the same grounds, which are thus explained in the argument of *Mr. Henderson.*

This Mississippi judgment, we say, conclusively established the plaintiffs' demand against the *estate* of the intestate Lee, not only in Mississippi, but in every State of the Union. We do not say but its ratable priorities and claims, *as to order of satisfaction,* are to be governed by the local law of the administration. The claim, however, is legally *authenticated* as against the *decedent estate,* so as to entitle it to payment and satisfaction, though put to judgment in a different State than that of the administration. 13 Pet. 312.

Notwithstanding all that is said in the books upon original and ancillary administrations in different States, we insist the administrative tribunals of a decedent's effects in no one *State* can reject the allowance of a creditor's claim from *another State,* if *legally established.*

The Constitution of the United States gives to the citizens of each State the privileges and immunities of the citizens of the several States. State tribunals, therefore, cannot regard a *co-State creditor* as a *foreign creditor,* and so administer the effects of the decedent within a State, to the *exclusive use of creditors* within that State. And so is it implied in 3 Pick. 128; and so, undoubtedly, is the requirement of the Constitution of the United States, above quoted.

The record of this judgment in Mississippi shows that the action was instituted against Lee in his lifetime, who appeared and plead; that before verdict he died, and his widow and administratrix, by the positive requirements of the laws of Mississippi, came in on *scire facias,* plead to, and defended the action. This, in Mississippi, merged the original cause of action, established the debt against the decedent estate, and was and is *res adjudicata.*

The act of Congress of 26th May, 1790, expressly requires that this judgment shall have full faith and credit given to it in every court within the United States, as it has by law or usage in the courts of the State of Mississippi. 1 Statutes at Large, p. 122.

It undoubtedly has, in that State, the *"faith and credit"* of establishing or authenticating *the debt* against the estate of Lee, regardless of whosesoever hands the estate may come to,

or be found in.   It is not that it merely establishes the debt against the administratrix, Ann Lee ; but against *the estate* of C. S. Lee.

The judgment, thus presented, either by *suit,* in the courts of Louisiana, or to the administrator, in Louisiana, for. *allowance* or *payment,* must have the same "faith and credit" accorded to it as in Mississippi.   6 Wheat. 129 ; 7 Cr. 481 ; 13 Pet. 312.

Now, this "faith and credit" is not so conceded to a *foreign judgment.*   Hence the case in 2 Rawle, 431, which was a judgment from *Barbadoes,* sued on in Pennsylvania.   *All the pleas* in that case imply the opinion of the pleader, that, had it been a judgment from another State of the Union, the defence could not have been relied on ; nor does the court say otherwise.

Another well-established rule of decision sustains the point we contend for ; namely, that the judgment of a competent State court merges and extinguishes the original cause of action as to all parties and privies, whether privies by blood or estate *in all other States of the Union.*   3 Wash. C. C. R. 17 ; 1 Pet. 692, 693 ; 16 Mass. 71.

But a *foreign judgment* does not so extinguish the cause of action, if again sued on here, as to bar recovery for this cause.

Again : our petition makes no *personal* demand against the defendant ; but, setting forth a claim against the estate of Lee, by authentication of a judgment, duly obtained, in contest with the administratrix in Mississippi, seeks its satisfaction out of Lee's estate in Louisiana, represented by the defendant as administrator.   But the spirit of his objection is *personal to himself.*   It is not that he questions but the cause of action has been established in judgment, by a court of competent jurisdiction, as *against Lee's estate,* so far as represented by his administratrix in Mississippi ; but defendant objects, the estate is *not* thereby liable in Louisiana, till he, defendant, has litigated the *same question over again.*   And for what good ? Is there in the Constitution of the United States, and the laws of Congress, any sensible purpose or policy that this question should be *twice litigated,* in order to conclude *the estate* of Lee, as represented by this administrator, any more than if this judgment had been rendered against Lee, in his lifetime ?

Suppose this judgment in Mississippi had been rendered in the United States Circuit Court, and then sued on as now in the United States Circuit Court of Louisiana ; could this defence be heard ?   Now the 31st section of the Judiciary Act of 1789 provides, that where the defendant dies pending the

suit, his representatives may be brought in by *scire facias*, as in this case, and "the court may render judgment *against the estate of the deceased* party." But what a silly provision of law, if, when they have so *rendered judgment*, the same controversy shall be tried over again in every other State where the judgment may be carried for enforcement and satisfaction, against the same decedent's "*estate.*"

As this pretended right of defence does not go to bar *the original cause of action*, it is a mere technical objection, without semblance of merit. For, on any supposition that the first judgment was *fraudulently obtained*, the defendant here could *undoubtedly* make that defence by plea. But, with *no objection* against the justice or integrity of the judgment, that the defendant may relitigate it from mere caprice is certainly a most idle rule of construction, for no possible good.

The only pretence of legal rule which can be offered in vindication of this claim of the defendant to litigate the *original* cause of action in this case over again is, that, as between the defendant with whom it was contested in the State of Mississippi, and this defendant in Louisiana, there is *no privity;* and hence the judgment is *not evidence* against him.

But we deny the fact that there is *no privity.* There is, in all truth, and in the *rationale* of the thing, a clear *privity of estate.* On Lee's death, his *estate*, everywhere throughout the United States, was *liable* to payment of his *debts.* No one anywhere could take possession of this estate, either by lawful administration or by *tort*, that did not hold in *privity* to the creditor's claim, as verily as to the claims of heirs and distributees. The decedent's estate, to *this end and responsibility*, is but a *unit*, though possessed by a dozen administrators in different States of the Union. And in what sense can an administrator claim to be a *privy* at all? No connection of *blood*, nor the *agent's claim* which he has to the *estate*, could give *him, as administrator*, the relation of *privity* in any legal sense. Had this judgment been granted against *Lee* in his lifetime, this objection would have the same force. His *privity*, as administrator on the estate of *Lee*, would have been precisely what it now is; namely, he would have been no *party* to the judgment, nor would he be holding any part of the *estate*, by virtue of his administration in Louisiana, which the judgment *directly* bound, or could be levied on. Yet, surely, this plea could not avail in such case; and equally clear, *on the same principles*, it cannot avail here. But if there were any room to distinguish the legal effect of a judgment obtained against the *decedent*, and one obtained by *suit* against his administrator, then we reply, that this suit, having

been instituted against the *decedent in person*, and *who became party to the record*, the same privity in succession connects this defendant with this record and judgment, as if the decedent had survived till the verdict was rendered against him.

But the truth is, the doctrine of personal privity has no application here, and can never be interposed, but as to parties who may be affected in their *personal rights*. A *trustee* of a legal title for the heirs cannot object to the judgment against the *ancestor* as incompetent evidence in suit against *him* to recover the trust property, on the ground that *he* is not a privy to the judgment. And so of the administrator, who is but a trustee for the *creditors* and *distributees*.

If the case in 16 Mass. 71 would seem to conflict with this last position, that of 3 Rand. 287 sustains a contrary rule.

The authority of the late Justice Story, in his Conflict of Laws, § 522, has been referred to in support of the defendant's objection. In a clear case of *conflict of laws*, where the *foreign claim* was "*to affect assets*" of the local administrator, to the prejudice of local creditors, the rule insisted on might, to some form and extent, be applicable. But the conflict of laws, as between nations foreign to each other, not bound to recognize each other's judgments, nor to recognize the claim of the foreign creditor on the same ground as the domestic creditor, — such conflict of laws is not predicable of the subsisting relations of these United States. The judgments of the several States under the Constitution and laws of Congress, before referred to, are not foreign to each other in the sense of the common law. And the Constitution of the United States secures each creditor of the different States the same rights in prosecuting his claims in any other State, whether against the living man or the *estate* of the dead, as are secured to the citizens of the State where the same is prosecuted. If, therefore, the rule as now contended for was intended to be asserted by Justice Story as applicable to *these States*, we are bound to say his assertion is without authority, and against the paramount laws of the Union.

Mr. Justice GRIER delivered the opinion of the court.

John B. Thrasher, the plaintiff below, commenced this action by a petition (according to the practice of the courts of Louisiana) in the nature of an action of debt upon a judgment. He claimed as assignee of a judgment obtained in the Circuit Court of Claiborne county, in the State of Mississippi, by Dart & Gardner against Ann Lee, administratrix of C. S. Lee, deceased. David S. Stacy, the defendant below, is the administrator of Lee in the State of Louisiana, where he had his dom-

icile at the time of his death. In his pleas he has set forth six
several grounds of exception against the plaintiff's right to re-
cover, the last of which is in the nature of a demurrer to the
declaration, or a denial of the plaintiff's right to recover on the
case set forth in his petition. As the decision of this point will
be conclusive of the whole case, it will be unnecessary to no-
tice the others.

The question presented by the demurrer is, whether the
judgment against Ann Lee, the administratrix of Charles S. Lee
in Mississippi, is evidence by itself sufficient to entitle the plain-
tiff to recover against Stacy, the administrator of the same in-
testate in Louisiana. Or, to state the point disconnected with
the accidents of the case, Will an action of debt lie against an
administrator in one of these United States, on a judgment ob-
tained against a different administrator of the same intestate
appointed under the authority of another?

This is a question of great practical importance, and one
which, we believe, has not yet been decided.

The administrator receives his authority from the ordinary
or other officer of the government where the goods of the in-
testate are situate. But coming into such possession by suc-
cession to the intestate, and encumbered with the duty to pay
his debts, he is considered in law as in privity with him, and
therefore bound or estopped by a judgment against him. Yet
his representation of his intestate is a qualified one, and ex-
tends not beyond the assets of which the ordinary had jurisdic-
tion. He cannot, therefore, do any act to affect assets in an-
other jurisdiction, as his authority cannot be more extensive
than that of the government from whom he received it. The
courts of another State will not acknowledge him as a repre-
sentative of the deceased, or notice his letters of administra-
tion. (See Tourton *v.* Flower, 3 P. Wms. 369; Borden *v.*
Borden, 5 Mass. 67; Pond *v.* Makepeace, 2 Metcalf, 114;
Chapman *v.* Fish, 6 Hill, 554, &c.)

It follows as a necessary inference from these well-estab-
lished principles, " that, where administrations are granted to
different persons in different States, they are so far deemed in-
dependent of each other that a judgment obtained against one
will furnish no right of action against the other, to affect assets
received by the latter in virtue of his own administration; for
in contemplation of law there is no privity between him and
the other administrator." (See Story, Confl. of Laws, § 522;
Brodie *v.* Bickley, 2 Rawle, 431.) The same doctrine is rec-
ognized in the case of Aspden *v.* Nixon (4 How. 467) by this
court.

But it is contended, that, however applicable these principles

may be to judgments against administrators acting under powers received from States wholly foreign to each other, they cannot apply to judgments against administrators in different States of this Union, because of the provision of the Constitution, which ordains that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State."

The act of Congress of 26th May, 1790, which prescribes the mode of authenticating records, and defines their " effect," enacts, that they " shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from whence the said records are or shall be taken."

The question, then, arises, what is the " effect," or the " faith and credit," given to the judgment on which this suit is brought, in the courts of Mississippi ? The answer to this must be, that it is evidence, and conclusive by way of estoppel, 1st, between the same parties ; 2d, privies ; and 3dly, on the same subject-matter, where the proceeding is *in rem*.

But the parties to these judgments are not the same.

Neither are they privies. " The term privity denotes mutual succession or relationship to the same rights of property." (Greenleaf on Ev. § 523.) Privies are divided by Lord Coke into three classes, — 1st, privies in blood ; 2d, privies in law ; and 3d, privies by estate. The doctrine of estoppel, however, so far as it applies to persons falling under these denominations, applies to them under one and the same principle, namely, that a party claiming through another is estopped by that which estopped that other respecting the same subject-matter. Thus, an heir who is privy in blood would be estopped by a verdict against his ancestor, through whom he claims. An executor or administrator, suing or sued as such, would be bound by a verdict against his testator or intestate, to whom he is privy in law. With regard to privies in estate, a verdict against feoffor would estop feoffee, and lessor, the lessee, &c.

An administrator under grant of administration in one State stands in none of these relations to an administrator in another. Each is privy to the testator, and would be estopped by a judgment against him ; but they have no privity with each other, in law or in estate. They receive their authority from different sovereignties, and over different property. The authority of each is paramount to the other. Each is accountable to the ordinary from whom he receives his authority. Nor does the one come by succession to the other into the trust of the same property, encumbered by the same debts, as in the case of an administrator *de bonis non*, who may be truly said to have an

official privity with his predecessor in the same trust, and there-fore liable to the same duties. In the case of Yare v. Gough (Cro. Jac. 3), it was decided that an administrator *de bonis non* could not have *scire facias* upon a judgment obtained by his predecessor on a debt due to the intestate "*for default of priv-ity.*" But in Snape v. Norgate (Cro. Car. 167), it was decided that a *scire facias* would lie *against* an administrator *de bonis non*, on a judgment against the executor ; and the court attempt to make a distinction between that and the preceding case, on the ground that " he cometh in place of the execu-tor " ; or in other words, by reason of an official succession or privity. These cases cannot be well reconciled on principle ; but the difficulty was remedied in England by the statute of 17 Charles 2, c. 8. The Court of Appeals of Virginia have considered the latter case as founded on more correct principles than the first, and have overruled the doctrine of Yare v. Gough. (Dykes v. Woodhouse, 3 Randolph, 287.)

We may assume, therefore, that in the State of Mississippi, as in most other States in the Union, the administrator *de bonis non* is treated as privy with his predecessor in the trust, and estopped by a judgment against him ; but the question still recurs as to the effect of a judgment in that State as against one who has neither personal nor official privity with the de-fendant. Each administrator is severally liable to pay the debts of the deceased out of the assets committed to him, and therein they resemble joint and several co-obligors in a bond. A judgment against one is no merger of the bond, nor is it ev-idence in a suit against the other. Their common liability to pay the same debt creates no privity between them, either in law or in estate.

It is for those who assert this privity to show wherein it lies, and the argument for it seems to be this : — that the judg-ment against the administrator is against the *estate* of the in-testate, and that his estate, wheresoever situate, is liable to pay his debts ; therefore the plaintiff, having once established his claim against the estate by the judgment of a court, should not be called on to make proof of it again. This argument as-sumes that the judgment is *in rem*, and not *in personam*, or that the estate has a sort of corporate entity and unity. But this is not true, either in fact or in legal construction. The judgment is against the person of the administrator, that he shall pay the debt of the intestate out of the funds committed to his care. If there be another administrator in another State, liable to pay the same debt, he may be subjected to a like judg-ment upon the same demand, but the assets in his hands can-not be affected by a judgment to which he is personally a

Stacy *v.* Thrasher.

stranger. A judgment may have the " effect " of a lien upon all the defendant's lands in the State where it is rendered, yet it cannot have that effect on lands in another State by virtue of the faith and credit given to it by the Constitution and act of Congress. The laws and courts of a State can only affect persons and things within their jurisdiction. Consequently, both as to the administrator and the property confided to him, a judgment in another State is *res inter alios acta.* It cannot be even *primâ facie* evidence of a debt ; for if it have any effect at all, it must be as a judgment, and operate by way of estoppel.

It is alleged by those who desire to elude this conclusion, while they cannot deny the correctness of the principles on which it is founded, that it is technical and theoretical, and leads to an inconvenient result. But every logical conclusion upon admitted legal principles may be liable to the same imputation. Decisions resting only on a supposed convenience, or principles accommodated to the circumstances of a particular case, generally form bad precedents. It may be conceded that in this case there is an apparent hardship, — that the plaintiff who has established his claim after a tedious litigation in Mississippi should be compelled to go through the same troublesome process in Louisiana. But the hardship is no greater than if the administrators had been joint and several co-obligors in a note or bond. A plaintiff may be fairly presumed always to have the evidence of his demand in his possession, and the ability to establish it in any court. But if a judgment against an administrator in one State, raised up, perhaps, for the very purpose of giving the plaintiff a judgment, should be conclusive on the administrator in another State, the estates of decedents would be subjected to innumerable frauds. And to what purpose is the argument that the defendant may be permitted to prove collusion and fraud, when, in order to substantiate it, he must commence by proving a negative ? This would be casting the burden of proof where it ought not to rest, and would cause much greater inconvenience and injury than any that can possibly result from the present decision.

The judgment of the Circuit Court must, therefore, be reversed.

Mr. Justice McLEAN and Mr. Justice WAYNE dissented.

### Order.

This cause came on to be heard on the transcript of the record of the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On

consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, to be proceeded in according to law and justice, and in conformity to the opinion of this court.