## WIER *v.* ALLEN.

In an action on the case for slander, the plea of the general issue imposes on the plaintiff the duty of proving all such facts alleged in his declaration as are essential, in law, to his right to recover. If, therefore, the plaintiff claims to recover special damages, by reason of the loss of certain specified customers, he must prove such special damage, as well as the fact of the speaking of the words alleged.

The plaintiff claimed special damages for the loss of certain specified customers by reason of slanderous words spoken by the defendant, imputing a venereal disease to the plaintiff's stallion. The defendant pleaded the general issue. *Held,* that the defendant could not be permitted to show the truth of the words spoken, in mitigation of general damages; but that he was not precluded from showing that a specified item of special damage was occasioned by the fact of the existence of the disease imputed by the words, and not by the words themselves. *Held,* also, that the defendant might show that the special damage from loss of custom was occasioned, not by his own speech, but by the speech of others with whom he had no connection, and for whose words he was not responsible.

Evidence tending to show the prevalence of common report, to the effect that the animal was affected with the disease imputed by the slanderous words, was admissible in mitigation of damages, under the provision of ch. 208, sec. 6, Gen. Stats.

Common rumor being the aggregate and collective result of individual speech, it was competent for the defendant to show that particular individuals spoke, concerning the horse, words substantially like those charged upon the defendant, as tending to show the prevalence of common report.

In slander, for speaking of the plaintiff's horse words imputing a disease to the animal, evidence that former owners of the horse, during such ownership, said the horse was sick, is inadmissible.

[BELLOWS, C. J., dissenting.]

CASE, by Frederick A. Wier against Henry Allen, for slander. Writ dated July 2, 1868. The declaration, which is made part of this statement, alleged that the plaintiff, in June, 1868, was the owner of a stallion called " P. G.," which he kept for the use of mares ; that the defendant, in June, 1868, said " old P. G. has got the pox," meaning that said stallion had a certain loathsome venereal disease ; that by means of this slander the plaintiff's business was injured generally, and also specially, by the loss of certain specified customers who would otherwise have brought their mares to the plaintiff's stallion. Plea, the general issue.

The jury were instructed that, if the defendant spoke the words substantially as alleged, the plaintiff was entitled to a verdict for nominal damages, if they found no actual damage. The jury returned a verdict for the defendant.

Subject to exception, the defendant was allowed to introduce evidence tending to show that the plaintiff's stallion had a venereal disease in 1866. Subsequently evidence was introduced, without objection, as to the condition of the stallion in June, 1868. The defendant contended that the disease existing in 1866, was venereal, and that the same disease reappeared in June, 1868 ; but that it was not of that advanced stage, or peculiar type, called " pox." The jury were instructed that, inasmuch as the defendant had not pleaded justification, if the evidence introduced as to the disease satisfied them that the stallion had the pox in 1868, it could not benefit the defendant in this case, but must be disregarded and not allowed to have any effect on the verdict ; but, if the evidence showed that the stallion had some disease other than the pox, and the existence of that disease was the real cause of the loss of the customers specified in the writ, that would bar the claim for special damages, and might also be considered in passing upon the question of general damage.

The defendant offered evidence, in mitigation of damages, to show that the words spoken were the repetition of common report. Subject to exception, the defendant was allowed to prove, by John W. Taggart, that Levi Hooper said to him (concerning the stallion), "They say he's got the pox."

It appeared that one Benedict owned the horse in 1866, and sold him to one Perry, who in 1867 sold him to the plaintiff. Subject to exception, the defendant was allowed to show that, in 1866, while Benedict was the owner, Benedict said the horse was sick and off from his feet, and that he was going to leave him where he was and go home ; also, that Perry, while he owned him in 1867, said that the horse had been sick and wasn't fit to look at. Motion to set aside the verdict. Case reserved.

*Wheeler & Faulkner,* for the defendant.

1. Upon an important branch of the case—the question of damages —evidence tending to show the existence of a disease other than that

charged, was competent. The defendant was liable only for such damages as he had occasioned. For the loss of business occasioned by the diseased condition of the horse he should not be held liable.

2. Taggart's testimony was introduced for the purpose of proving that the words complained of were "the repetition of a common report." Common report is made up of the report of individuals, and it is not necessary that each individual who helps to give currency to the rumor should state the subject-matter as within his own knowledge. "They say" is equivalent to "it is reported;" and evidence that Hooper was stating that a certain report was in existence was one step in the process of showing, not that the report was true, but that there was such a report. 1 Greenl. Ev. 114.

3. The declaration of a deceased person, against his own interest, as to a matter in regard to which he appears to have had means of knowledge, is admissible. 1 Greenl. Ev. 175; *Hinkley* v. *Davis*, 6 N. H. 210. Neither Benedict nor Perry resided in this State; and being thus beyond the jurisdiction of the court, there would seem to be the same propriety in admitting evidence of such declarations by them as if they were actually deceased.

*Cushing* (with whom was *Vose*), for the plaintiff.

1. The evidence tending to show disease was really equivalent to a justification under the general issue, and, notwithstanding the instructions of the court, we think could not fail to prejudice the jury.

2. The evidence of Taggart was to a matter of hearsay. Levi Hooper might have testified to the fact that he had heard such and such things said. Taggart could only testify that he had heard Hooper say there was a common report.

3. We have been able to find no case in which hearsay like that of Benedict and Perry has been admitted. The only ground on which such evidence is admitted seems to us to be privity. *E. g.*, if the contest had been about the title, what former owners said about it might have been evidence on account of the privity of title. If the contest had been about a fraudulent sale in which Benedict or Perry had been concerned with the plaintiff, that fraudulent connection might have made their sayings admissible. But we can see nothing like privity between the former owners and the plaintiff in regard to the health of the animal.

FOSTER, J. The jury were instructed, that if the defendant spoke the words substantially as alleged, the plaintiff was entitled to a verdict for nominal damages, even if they found no actual damage. The jury returned a verdict for the defendant; and by reason of this finding, the plaintiff's several exceptions, taken on the trial, have become of no practical importance in the case before us.

To adopt the language of the defendant's counsel, in argument,—"If every part of the evidence objected to was incompetent, its admission

would furnish no ground for setting aside the verdict. The instructions to the jury were unexceptionable, and the jury must be presumed to have understood and followed them. *Lathrop* v. *Sharon*, 12 Pick. 172 ; *Wendell* v. *Moulton*, 26 N. H. 63. The jury could not, without wholly disregarding the instructions of the court, have returned a verdict for the defendant, if they had not found that the defendant did not speak the words alleged. If he did not speak the words, he was not liable at all ; and no misdirection as to the measure of damages, or admission of evidence, bearing only upon the question of the amount of damages, could be cause for setting aside the verdict. It is not to be presumed that evidence relating only to the amount of damages recoverable by the plaintiff, in case the words charged were spoken by the defendant, could have influenced the jury, in their finding that the words were not spoken by him. *March* v. *Portsmouth & Concord Railroad*, 19 N. H. 372 ; *Carpenter* v. *Pierce*, 13 N. H. 403 ; *Judge of Probate* v. *Stone*, 44 N. H. 593."

There must be

*Judgment on the verdict.*

But, since we are informed that there are several cases of similar character brought by this plaintiff, in which other persons are charged with slander concerning this horse, which cases are standing for trial upon the docket, and concerning which similar questions to those comprehended by the present case will probably arise, we have thought it expedient to consider and express the opinion of the court upon the various subjects suggested by the plaintiff's exceptions.

1. The defendant was permitted to introduce evidence tending to show that the plaintiff's horse had a venereal disease in 1866.

Such evidence could be admissible, under the general issue, only in respect of damages, and upon the ground that the injurious consequences alleged by the plaintiff were not occasioned by the utterance of the words complained of.

The plea of the general issue requires the plaintiff to prove all the facts, as alleged in his declaration, which are essential, in law, to his right to recover ; consequently, such plea is proper and sufficient in all cases where the defendant means to deny or disprove any fact essential to the plaintiff's case,—as, where he means to deny that he spoke the words set forth in the declaration, or that the injurious consequences alleged by the plaintiff resulted from the act of speaking the words complained of. 1 Starkie on Slander 454.

The defendant had his choice of pleadings in answer to the plaintiff's declaration. He might have pleaded that the words were true, and that plea, if sustained by proof, would have constituted a perfect defence to the action. Not having pleaded this plea, he was precluded from taking the ground, on trial, that the plaintiff could recover no damages because his horse had a venereal disease either in 1866 or 1868.

The declaration alleged that the plaintiff was the owner of a stallion

which he kept for the use of mares, and that by means of the defendant's slander the plaintiff's business was injured generally, and also specially, by the loss of certain specified customers.

It is manifest that the alleged slander would naturally tend to the injury of the plaintiff in his business; and we are not in doubt upon the point that if the defendant spoke the words substantially as alleged, the plaintiff was entitled to a verdict for *some*, though perhaps merely nominal damages, even though the plaintiff might fail to prove the loss of the specified customers. "It would be highly inconvenient and inexpedient," says Mr. Starkie, "to make actual damage essential to the action, without regard to the obvious and immediate tendency of the defamation to occasion great, it may be irreparable injury." "It is desirable, if not necessary, under certain limits, to constitute the defamation a substantive and positive injury, independently of the proof of consequential damage." 1 Starkie on Slander, Preliminary Discourse, xxvi.

And therefore facts tending to prove the truth of the charge cannot be given in evidence under the general issue in mitigation of general damages. Such is the rule which has long been established in England, in this State, and in most of the States of the union. It is true, the rule has been relaxed in some jurisdictions,—in Ohio, Iowa, Maryland, Tennessee, and the District of Columbia,—and that it is abrogated in New York by the Code of Procedure (see Sedgwick on Damages 540, and notes), and that our own statute, to the effect that under the general issue the defendant may prove in mitigation of damages and to rebut evidence of actual malice that the conduct of the plaintiff was such as to create suspicion of the truth of the matters charged against him, would seem to indicate a tendency to relax somewhat the strictness of the established doctrine; but we are inclined for the present to adhere to the rule so long established, and mainly for the reasons which were regarded as sufficient so long ago as the first promulgation of the rule in 1744, when the chief justice of the king's bench declared that at a meeting of all the judges a large majority had determined not to allow the truth of the words spoken to be given in evidence on not guilty for the future, but that it should be pleaded, whereby the plaintiff might be prepared to defend himself, as well as to prove the speaking of the words,—"That this was now a general rule amongst them all, which no judge would think himself at liberty to depart from, and that it extended to all sorts of words, and not barely to such as imported a charge of felony." *Underwood* v. *Parks*, 2 Str. 1200.

In the present case, and cases like the present, of a claim for consequential damages for the loss of trade, if it be true, as declared by Mr. Starkie, that the plea of the general issue requires the plaintiff to prove not only the utterance of the words, but also the special damage alleged, and permits the defendant to deny that the injurious consequences alleged by the plaintiff resulted from the act of speaking the words, it would seem that the defendant should be at liberty to introduce evidence tending to show that the loss of the plaintiff's customers was

attributable to the condition of the animal, and not to the defendant's words.

The defendant cannot justly be held to pay the plaintiff for a loss which was not occasioned by his act.

The plaintiff alleges that the special damage he has suffered was caused by the defendant's speech. Now, if Mr. Starkie's proposition be uncontroverted (and we believe it to be a truthful exposition of the law), it follows inevitably that, in order to be entitled to recover the special damages claimed, the plaintiff must prove that such damage was occasioned by the defendant.

Proof of the slanderous words, in connection with the loss of the specified customers, is sufficient to warrant the jury in finding the defendant chargeable. The defendant then may show, by any competent evidence, that the special damage did not result from his act. And what plainer, shorter, or more effectual way can there be of doing so, than by showing, affirmatively, that it grew out of and resulted from something else?

If the loss of the special custom for which the plaintiff seeks to make the defendant pay did not arise from the defendant's act, but happened because the animal in fact notoriously had the disease spoken of, what justice or what common sense is there in saying that the defendant shall not be permitted to show that the animal had the venereal disease, and that it was this condition of the animal which repelled the customers who would otherwise have brought their mares to him? To hold the opposite doctrine would be to establish this proposition: The horse had a venereal disease, and for that reason people cognizant of the fact refrained from bringing their mares to him. The defendant said he had the disease. Therefore he must pay for the loss of the custom occasioned by the fact, and not by the defendant's speech—an illogical proposition and a manifest absurdity.

Is there not a very plain distinction between the right to show the truth of the words in mitigation of *general* damages, and the right to show that an item of special damage was caused directly by the fact charged by the words, and not by the speaking of the words? We fail to apprehend any disturbance of established rules of pleading by the practical recognition of this distinction.

To say, as Mr. Starkie and the authorities do, that the plaintiff must prove the special damage as a consequence of the defendant's words, and, at the same time, to say that the defendant shall not be permitted to prove that the special damage resulted from some other cause, because such proof will incidentally show that his words were true, is a kind of talk that we are not prepared to promulgate. On the contrary, it seems to us nothing short of an absurdity to hold that the defendant may prove that the horse had some disease *other* than a venereal disease which caused the special damage, in order to repel the plaintiff's claim that it was caused by the defendant's words, and, at the same time, to insist that he shall not show that it was the existence of the very disease itself that caused the special damage.

Let us endeavor to illustrate this matter: In an action of trespass for an assault and battery, the plaintiff introduces evidence tending to show that, as he was passing along the street, the defendant threw a stone in such a direction that it might have hit the plaintiff, and that the plaintiff had a bruise upon his head which might have been caused by the stone thrown by the defendant. May not the defendant then show that the bruise upon the plaintiff's head was caused by falling upon the ice, or by the kick of a horse, or by some other accident or means with which the defendant was not connected, and that therefore, if the jury believe the evidence presented by him, although he may be liable to pay some general damages for the assault, he is not liable to pay special damages in the case?

The court instructed the jury that if the stallion had some disease other than the pox, and the existence of that disease was the real cause of the loss of custom specified in the writ, such fact would be a defence to the plaintiff's claim for special damages, and might also be considered in passing upon the question of general damage. And these instructions we regard as unexceptionable, whether the evidence as to the character of the disease be limited as suggested or not, for, although evidence of disease and the loss of the specified customers thereby might be shown, it would not defeat the plaintiff's right, under these pleadings, to recover some general damages for reports naturally injurious to the plaintiff's business; and still, the same evidence would be competent as bearing on the question, How much general damage shall the plaintiff recover? because the actual condition and worth of the horse may bear somewhat upon the question of what the general business derived from the use of the horse was likely to be worth, and to what extent that general business was likely to be affected and diminished by means of the defendant's speech.

These instructions, then, were correct, and in our opinion they were expressed, as it was important they should be, so carefully and distinctly as to avoid the possibility of misapprehension or misconstruction by the jury. It was certainly competent, as bearing upon the question of special damages, to show that the loss of the plaintiff's customers was attributable, not to the words spoken by the defendant, but to another cause, namely, a diseased condition of the animal other than if not such as that imputed by those words.

The defendant was liable only for the damage which he had occasioned. The damages must be the result of the injury complained of—the legal, proximate consequences of the words spoken. 2 Saund. Pl. & Ev. *927; 2 Greenl. Ev., secs. 254, 420. The special damage for which the defendant is to be charged must arise wholly from the defendant's act. *King* v. *Watts*, 8 Carr. & P. 614; *Dixon* v. *Smith*, 5 H. & N. 450; *Olmsted* v. *Brown*, 12 Barb. 657; *Vickars* v. *Wilcocks*, 8 East 1; 2 Stark. Ev. 873.

In actions on the case for words not actionable in themselves, but actionable in consequence of the special damage alleged, not guilty puts in issue the special damage stated in the declaration. 2 Saund. Pl. & Ev. *939; 2 Stark. on Slander 64.

II. The defendant offered evidence, in mitigation of damages, to show that the words spoken were the repetition of common report. And thereupon one Taggart was permitted to testify that Levi Hooper said to him, concerning the stallion, "*They say* he's got the pox."

It is competent for the defendant, under the law of this State, to prove, in mitigation of damages, &c., under the general issue, that the words complained of were the repetition of common report. Gen. Stats., ch. 208, sec. 6.

And from early times the courts of England and America have held that general suspicions and common reports of the guilt of the accused may be given in evidence in mitigation of damages.

It is important to bear in mind that the evidence offered in this case, and admissible under the statute, is not evidence of *general reputation*, such as can only be shown upon direct examination by general inquiries, involving necessarily the judgment and opinion of the witness; but (and the distinction is important) the issue for the jury to try involves the determination of the existence or otherwise of a certain and distinct fact, and not the general judgment, opinion, and belief of the community as to the general character of an individual. The naked question of fact is, Do common reports and suspicions of the bad character of this horse, in a specified particular, exist? not, What is the horse's general reputation?

Mr. Wendell, in his notes to 2 Starkie on Slander 96, observes and appreciates the distinction when he says,—"It is manifest the learned author [Starkie] is not well content with the doctrine he feels himself bound to advance, and that he would gladly place the defence upon general evidence of the *bad character* of the plaintiff, as when the character of a witness for veracity is impeached, rather than upon evidence of suspicion and reports; but such has not been, nor is it now, the law as held in England."

How, then, may you prove the fact of the existence of common rumor? It is, as we have said, a substantive fact for the jury, and any otherwise competent evidence must be admissible which tends to prove the fact. Therefore, the testimony of A, that B, in any sufficient form of words, imputed the charge to the plaintiff (or concerning his property) which is comprehended by the terms of the alleged slander, may be considered by the jury, whose office it is to say to what extent B's declarations go in the direction of the current stories which, in the aggregate, make up common rumor.

And although the jury would not be likely to find the prevalence of common report from that evidence alone, yet testimony of the same character as to the declarations of C, D, E, F, and G might be sufficient proof of the existence of the fact required, namely, common report.

In order to show the existence of common report, it is not to be required that every individual, whose sayings in connection with those of others go to make up common report, should himself be called to testify either as to facts within his knowledge upon which his assertions

have been predicated, or that he has made assertions concerning the subject-matter, whether founded in truth or not. The inquiry is not whether common report tells the truth, but whether, concerning a certain matter, common report prevails.

And since common report is but the aggregate of individual speech, it must be competent to show what this, that, and the other man has said. In such a case the declarations of third persons, communicated through the medium of a second, are not within the meaning of hearsay evidence, but are original, independent facts, admissible in proof of the issue. 1 Greenl. Ev., sec. 100 ; *Insurance Co.* v. *Weide,* 11 Wallace 441, 442.

The character of the evidence, as to its admissibility, is not impaired by the prefatory remark of Hooper " they say," which seems to be employed by the retailer of idle stories as a sort of self-exculpatory formula. It is the equivalent of " it is reported," or " I understand;" and while such is the common form and manner of spreading rumors, the use of these expressions in no respect qualifies the plain statement of an asserted fact.

Concerning the purpose and effect of this evidence, however, the jury should receive very particular instructions. The testimony of Taggart is not to be considered as any evidence at all that there *was* any such report as Hooper related to him. That would be to prove the fact of common report by the hearsay evidence of Taggart. The testimony of Taggart is competent, only, as evidence that Hooper himself made a declaration to the effect that the stallion had the venereal disease—evidence of the fact, and nothing else, that Hooper made an assertion which, taken in connection with similar declarations of a sufficient number of other individuals, would, in the aggregate, create a common rumor. It is evidence, merely, of Hooper's own individual contribution to the current of popular rumor, and is not evidence that " they" said, but only that Hooper said, substantially, that the horse was thus diseased.

The testimony of Taggart was not offered to prove the fact that the stallion had the disease. For any such purpose it would be inadmissible, being excluded on the principle which rejects hearsay evidence or the opinions of non-experts, but for the purpose of tending to show the prevalence of common rumor ; and, accompanied with such instructions to the jury as we have here suggested, we are of the opinion the evidence should be received.

It would be competent to show, by any proper evidence, Hooper's declaration in disparagement of the horse's character, in the particular under discussion, uttered prior to the speaking of the actionable words by the defendant, upon the ground expressed by Mr. Justice GILCHRIST in *Wetherbee* v. *Marsh,* 20 N. H., at page 566, where he says,—" The defendant had spoken words charging the plaintiff with having burned his buildings and the buildings of others. Now, if before these words were spoken it had been generally reported and believed that the plaintiff had committed these acts, still, if the words were untrue they

were unjustifiable. But to say that they did the plaintiff as much damage as if they had first caused the belief or suspicion of his guilt, would seem to confound a plain and recognized distinction. How generally this belief prevailed, how firmly it was founded in the common mind, * * were questions for the jury to entertain, and were proper subjects for their consideration in assessing the damages, or determining whether any had been sustained."

The evidence in *Wetherbee* v. *Marsh* was, that *particular individuals* made the same charge against the plaintiff on the night of the fire, and before the time when the defendant spoke the words in question.

So in the case before us, although evidence that Hooper said " He's got the pox," or " They say he's got the pox," would not be sufficient, standing alone, to prove common report, it would still be evidence from which the jury might find that *all* the damage which the plaintiff had sustained was not to be charged upon the defendant.

To adopt the language of BLACKBURN, J., in *Watkin* v. *Hall*, 3 Q. B. 401 : " The question is, whether the words repeated by the defendant were likely to be injurious to the plaintiff, and calculated to do him damage, being uttered by the defendant without any reason that would make it not malicious to repeat them. Whether the fact that other people had spread the report does or does not entitle the plaintiff to recover substantial damages, or whether one farthing would be sufficient, is a question for the jury to estimate, on weighing the actual mischief that the plaintiff may have suffered from the unauthorized repetition of a rumor which must in its nature be mischievous to a person in trade," &c. See, also, *McPherson* v. *Daniels*, 10 B & C. 272, 273 ; *Du Bost* v. *Beresford*, 2 Camp. 512 ; 1 Greenl. Ev., sec. 101.

The evidence may not only fail to show common report, but it may have no tendency in that direction,—for it may appear that only a single individual had made the slanderous accusation before the defendant repeated it; but if that single individual had uttered the slander in the presence of a crowd of people, or to but one person who would otherwise have been the plaintiff's customer, is not the jury at liberty, if not in reason bound, to say that the defendant is not chargeable with *all* the damage sustained by reason of the slanderous report?

In illustration of another branch of the case, we supposed an action of trespass for an assault and battery, in which, as we suggested, the defendant might show that the bruise upon the plaintiff's head was caused by an accident with which the defendant had no connection, and not by the stone thrown at the plaintiff, but which did not hit him. In the case supposed, as the plaintiff was passing along the street, the defendant threw a stone in such a direction that it might have hit the plaintiff, and the plaintiff had a bruise upon his head which might have been caused by the stone thrown by the defendant.

Upon this evidence the jury would be warranted in finding that the defendant committed the assault and battery, and caused all the special damage sustained.

But the plaintiff having gone thus far, the defendant may introduce

evidence tending to show that when the defendant threw the stone, and before and afterwards, other stones were thrown by other persons, which might have caused the plaintiff's bruise.

If the jury may draw the inference which the plaintiff desires, they may draw the inference which the defendant desires. A plaintiff has no monopoly of the legal right to produce any class or kind of evidence. If the jury should find that the throwing of the other stones by other persons originated in and was instigated or caused by the defendant, the fact that those other persons threw the stones and bruised his head might not help the defendant's case; but if that fact was not found, the throwing of the other stones might be as material upon the question of damage as the one thrown by the defendant; or more so, if the jury should find that one of those stones, and not that thrown by the defendant, inflicted the injury to the plaintiff's head.

The question is whether the plaintiff's bruise was caused by the stone thrown by the defendant, or at his instigation, or through his agency, or whether the bruise was caused by a stone thrown by some person for whose act the defendant is not responsible. It is not a mere question of the time when any of the stones were thrown, whether before or after the throwing of the stone by the defendant.

If this is not so, the plaintiff may, in two suits against two different persons, recover double damages for one injury, and that an injury for which only one man is in fact responsible. Not only may the guilty man be compelled to pay damages, but a man may be compelled to pay damages for an injury done by another for whose act he is not in any degree responsible. And by the same rule an injured party may recover an hundred fold damages of an hundred different persons, ninety-nine of whom did not commit the injury complained of. And, also, by the same rule, a man may be compelled to pay damages for the acts and words of an hundred other persons, when he was in no wise responsible for anything said or done by any of them. There is no limit to the monstrous injustice of such a rule.

All this is entirely independent of the question whether the defendant's words were true or not. It is not a question of the truth of his words: the question is, supposing them false, What injury has the plaintiff sustained from them? what damages is he entitled to for the injury received by him from the defendant's false words, not from the words of other people, for which the defendant is not responsible?

It has been repeatedly held in this State, in cases subsequent to *Wetherbee* v. *Marsh*, that common report is inadmissible, even in mitigation of damages. See *Dame* v. *Kenney*, 25 N. H. 318; *Pallett* v. *Sargent*, 36 N. H. 499; *Knight* v. *Foster*, 39 N. H. 576;—but the doctrine and authority of *Wetherbee* v. *Marsh* have since been confirmed and established by legislative enactment. Gen. Stats., ch. 208, sec. 6.

III. We have been unable to discover any ground upon which the declarations or admissions of Benedict and Perry can be received in evidence.

An exception to the rule respecting hearsay evidence is made in the

case of admissions by parties to the suit, and also against their privies. 1 Phil. Ev: 339, 391. With respect to admissions made by persons who have been privies in estate to the parties against whom the admissions are used, the evidence, when the parties are deceased, is generally admissible as being a declaration against interest. 1 Phil. Ev. 29, 391 ; 1 Greenl. Ev., sec. 147 ; 1 Stark. Ev. 51, 70. And if the evidence is offered as the admissions of privies in estate with the plaintiff, it would not seem to be material whether the declarants were alive or not at the time when the evidence was offered. But there is no privity between the plaintiff and the former owners of the stallion with regard to the *health* of the animal, and the declarations or admissions are not offered with respect to the character or fact of possession, nor as in disparagement of title. The term *privity* denotes mutual or successive relationship to the same rights of property. Bouv. Law Dict., Privity ; 1 Greenl. Ev., sec. 189 ; *Chamberlain* v. *Carlisle*, 26 N. H. 551 ; *Stacy* v. *Thrasher*, 6 How. 59,—and the declarations of privies are admissible only so far as they contain admissions in disparagement of that right. 1 Phil. Ev. 391, 392 ; and see Cowen & Hill's notes to Phil. Ev., pt. 2, note 194, p. 265.

BELLOWS, C. J., dissented.