FORIST *v.* BELLOWS & *Tr.*

Where, in a bill in equity, there has been a hearing on the merits, and a decree dismissing it, such decree will not ordinarily be without prejudice.

To charge a trustee, it must be shown, first, that he has money, goods, chattels, rights, or credits of the defendant in his hands; second, that they are open to attachment, either because the defendant has a right of action against the trustee to recover them, or they are held by the trustee by a title fraudulent as to creditors.

When a creditor of A seeks, in foreign attachment, to charge B, the trustee, for property which the creditor alleges was bought by B of C and paid for by B, upon an agreement between A and B that B should buy and hold the property for A, the creditor is estopped by a judgment, recovered by B against A, establishing the fact that there was no such agreement; and the creditor does not avoid the estoppel by proof of fraud in the agreement the existence of which he, as a privy claiming under B, is estopped to assert.

FOREIGN ATTACHMENT.　Issue, between the plaintiff and the trustee, tried by the jury.

The plaintiff claimed to charge the trustee in the sum of $250 for labor of the defendant, and $6,000, the proceeds of land sold by the trustee, belonging to the defendant, or in which he had an interest to that amount, which the plaintiff claimed the trustee held in trust for the defendant and in fraud of the defendant's creditors.

The plaintiff offered evidence in support of these claims, and the trustee then put in evidence the record in a bill in equity, in which there was a decree in his favor against the defendant, and the trustee claimed that the decree was conclusive on the question of his chargeability for the matters embraced in the equity suit; but the court ruled otherwise, and the trustee excepted.

The evidence tended to show, that at the April term, 1876, a decree was ordered in the equity suit dismissing the bill; that no decree was entered upon the records until the April term, 1877, when one was drawn up and signed by the justice presiding at the April term, 1876, and who was not then in office.　April term,

1877, the justice then presiding, without notice allowed the decree to be amended so as to show that the dismissal was "without prejudice to the trustee suits pending, wherein the defendant in that suit was summoned as the trustee of the plaintiff in the equity suit."

The plaintiff had a verdict, and the trustee moved for a new trial. Motion denied, and the trustee excepted. The other facts material are stated in the opinion.

*Ray, Drew & Jordan* and *H. Heywood*, for the trustee.

*Ladd & Fletcher, Twitchell & Evans*, and *Benton & Hutchins*, for the plaintiff.

STANLEY, J.  The decree in the equity suit dismissing the bill was ordered April term, 1876. It was unconditional. There was no limitation of its effect. Whether the justice then presiding had authority, after he was out of office, to sign the decree, we do not decide, since whatever decree was extended upon the record must correspond with the order then made; nor need we consider whether the court, at the April term, 1877, had the power, after notice, to allow the entry, or the decree made in pursuance of it, to be amended; for in this case the amendment was made without notice to the party whose rights were affected by it, and it is for this reason invalid.

"It concerns the commonwealth that things adjudged be not rescinded." "It concerns the commonwealth that there be an end of lawsuits." These maxims are so in harmony with justice and its proper administration, that they ought not, under any ordinary circumstances, to be lost sight of. When a cause has been fully heard on its merits, and a conclusion reached, in the absence of any suggestion of a failure of justice the party in whose favor the judgment is is entitled to its full benefit, not only in that suit, but in all cases where it is competent evidence; and were it necessary the order modifying the original decree would now be rescinded. *Gove* v. *Lyford*, 44 N. H. 525, 528. A different rule would deprive parties of the fruits of litigation, obtained after long and expensive trials, and subject them to annoyance and expense for which there is no justification, either in fact or in law.

As to the effect of the judgment in the equity suit upon the claim to charge the trustee for labor of the defendant, no question arises; for the court ruled that it was conclusive, and no exception was taken.

In regard to the claim to charge the trustee for the proceeds of the sales of the lands, the facts were, that in July, 1866, the lands in question, a divorce having been previously granted to the defendant's wife, Maria, were decreed to her as alimony. In 1866, and again in 1867, the trustee bought these lands at a tax sale, and

received a deed from the collector. In 1868 Maria gave to Charles Bellows a quitclaim deed of these lands, and in 1870 Charles conveyed them to the trustee. In 1869 the defendant gave the trustee a quitclaim deed of them. After obtaining these titles, the trustee sold the lands, and the plaintiff now seeks to charge him for the proceeds, on the ground that the titles were obtained in pursuance of an agreement to hold the lands and their proceeds for the defendant's benefit, after deducting the trustee's payments and expenses and interest, and that this agreement is fraudulent as to the defendant's creditors. The equity suit was brought by this defendant against the trustee, to recover the same sums for which the plaintiff now seeks to charge the trustee. The defendant claimed, in the equity suit against the trustee, the same that the plaintiff now claims, except that in the equity suit there was no charge of fraud. In that suit a referee found that the trustee had paid the defendant for his labor; that he had paid the taxes for the tax titles ; that he had paid Maria $200, and had paid the defendant $100 for his quitclaim ; and that there was no agreement or understanding that the trustee should hold the land or the proceeds for the benefit of the defendant;—and the bill was dismissed. It is not claimed that in the decree of divorce and alimony there was collusion between Maria and any other person, or that in the suit or decree in equity, or in any of the transactions of the parties, there was collusion between this defendant and the trustee.

The dismissal of the bill after a hearing on the merits conclusively settled all the matters embraced in it, and that decree is a bar to any subsquent suit between the defendant and the trustee for the same subject-matter. *Hollister* v. *Barkley,* 11 N. H. 501, 508 ; *King* v. *Chase,* 15 N. H. 9 ; *Demeritt* v. *Lyford,* 27 N. H. 541, 547 ; *Lamprey* v. *Nudd,* 29 N. H. 299, 303 ; *Hollister* v. *Abbott,* 31 N. H. 442, 447 ; *Tebbetts* v. *Tilton,* 31 N. H. 273, 287 ; *Hall* v. *Dodge,* 38 N. H. 346, 350 ; *Gove* v. *Lyford, supra ; Sanderson* v. *Peabody,* 58 N. H. 116 ; *Bigelow* v. *Winsor,* 1 Gray 299, 301 ; *Foote* v. *Gibbs,* 1 Gray 412 ; Story Eq. Pl., s. 793 ; Story Eq. Jur., s. 1523.

If the decree were collusive, it would not estop the plaintiff in this case to contest the question of payment. *Great Falls Co.* v. *Worster,* 45 N. H. 110 ; *Vogt* v. *Ticknor,* 48 N. H. 242, 248 ; *Granger* v. *Clark,* 22 Me. 128 ; *Candee* v. *Lord,* 2 N. Y. 269, 275 ; *Burgess* v. *Simonson,* 45 N. Y. 225, 229 ; *Christmas* v. *Russell,* 5 Wall. 290, 304 ; Freem. Judg., s. 435. But no collusion being proved or alleged, the plaintiff, claiming under the defendant, is a privy concluded by the decree as the defendant is concluded by it. *Flanders* v. *Davis,* 19 N. H. 139, 149 ; *Dickinson* v. *Lovell,* 35 N. H. 9, 16 ; *Stacy* v. *Thrasher,* 6 How. 44, 60 ; 1 Gr. Ev., ss. 189, 536 ; Freem. Judg., s. 162. The plaintiff's attachment is of the money, goods, chattels, rights, or credits of the defendant in the hands and possession of the trustee. In the absence of fraud the

plaintiff holds only what the defendant was entitled to hold and what he could recover against the trustee. *Haven* v. *Wentworth*, 2 N. H. 93; *Adams* v. *Barrett*, 2 N. H. 374; *Greenleaf* v. *Perrin*, 8 N. H. 273; *Paul* v. *Paul*, 10 N. H. 120; *Boardman* v. *Cushing*, 12 N. H. 112; *Getchell* v. *Chase*, 37 N. H. 110; *Richards* v. *R. R.*, 44 N. H. 127, 139; *Banfield* v. *Wiggin*, 58 N. H. 155; *Ins. Co.* v. *Weeks*, 7 Mass. 438; *Hooper* v. *Hills*, 9 Pick. 435; Drake Att., ss. 458, 517, 541, 672. As the defendant is estopped, by the decree, to maintain an action against the trustee for wages, the payment of which is adjudicated by the decree, so this plaintiff, claiming, as the property of this defendant, wages due from the trustee to him, is estopped as a subsequent assignee of the wages would be estopped by the adjudication of payment. When A, being sued by B for a debt, without fraud or collusion obtains a judgment establishing the fact that the debt has been paid to B, he cannot be subjected to the annoyance and expense of being compelled to litigate the same question in every subsequent suit of foreign attachment which the creditors of B may choose to bring.

Upon the same ground the decree is conclusive against the plaintiff in regard to the proceeds of the lands received by the trustee. He acquired a perfect legal title to the lands by the tax sales, and by the deed from Charles Bellows. The rights of the parties are the same as they would have been if the defendant had never owned the lands. The decree of the lands to Maria as alimony, and her subsequent conveyance to the trustee through Charles Bellows, gave the trustee as perfect a title, subject to the tax sales which the trustee had purchased, as if she had inherited them, or purchased them with money earned by her after the decree of divorce. The fact that the trustee paid the defendant $100 for a quitclaim deed does not affect it. He had a perfect title without it, for which the defendant had paid nothing. The ground on which the plaintiff claims to charge the trustee is, not that the trustee had no title to the lands, but that there was an understanding or agreement between the defendant and the trustee that the trustee should buy the lands and hold them, or their proceeds, as the property of the defendant or for his benefit. Whether there was any such understanding or agreement, and whether the trustee was owing the defendant for labor, were the two grounds on which the defendant claimed in the bill in equity that the trustee was bound to come to an accounting with him. Both of these claims were denied by the trustee, and the decree dismissing the bill conclusively adjudicated both against the defendant; and this adjudication is as conclusive as if it had been determined that there was such an understanding or agreement, and that the trustee had accounted and paid over to the defendant whatever was in his hands, or that, upon such accounting, there was nothing to be paid over. The defendant's claim for an account of the sales of the lands, like his claim for labor, required him to establish two propositions: first,

that there was such an understanding or agreement as he alleged, and, second, that the trustee had not accounted. These propositions both being denied, the existence of the agreement and understanding, which the plaintiff sets up as a ground for charging the trustee, was put in issue; and the finding of the referee that it had no existence, followed by the decree dismissing the bill, conclusively establishes that fact. Whether there were other grounds on which the trustee might have had a decree, it is unnecessary to inquire, since the record in the equity suit shows that there was no other issue relating to the lands raised or considered; and if there were other grounds on which the decree might have been based, they do not lessen its conclusiveness upon the point which was distinctly raised and decided. If this fact did have that effect, and parties and privies were not bound, judgments which might have been rendered on other grounds than those on which they were rendered would lose much of their force.

But the plaintiff claims that the trustee is estopped, because, in addition to the grounds alleged in the bill in equity, he avers that that agreement was fraudulent as to the defendant's creditors. This fact would have defeated the bill as to the proceeds of the lands, although if its existence were admitted or proved it would be ground for charging the trustee in this suit. But the difficulty with the plaintiff's position is, that the question of fraud cannot arise until the existence of the agreement is established. If there was no agreement, there could be no fraud in reference to it. To say that an agreement is fraudulent which never had an existence, is an absurdity. If the defendant had failed in the equity suit on the ground that there was such an agreement, but it was fraudulent as to his creditors, the plaintiff would not have been bound by the decree; but the plaintiff, claiming under the defendant and being a privy in estate, is bound by the decree which establishes the fact that there was no such agreement, and is not relieved from the effect of it by alleging facts which the decree conclusively proves never had and never could have had an existence, because the incident cannot exist without a principal. If the defendant had failed in the equity suit, not because there was no agreement, but because there was, and because it was fraudulent, or within the statute of frauds, the plaintiff would not have been estopped to assert the agreement the existence of which was a part of the ground on which the decree was made; but when the non-existence of the agreement is established by the decree as a fact (like the payment of the defendant's claim against the trustee for labor), which is binding on parties and privies, the plaintiff, claiming under the defendant, is a privy, and bound with him by the decree establishing those facts; and when the fact was conclusively established, by the decree, that there was no such understanding or agreement between the defendant and the trustee as the plaintiff asserted, the question of fraud became immaterial.

The ruling of the court, as to the effect of the decree dismissing the bill in equity, was erroneous, and

*The verdict is set aside.*

BINGHAM, J., did not sit: the others concurred.