CARTER & a. *v.* WEBSTER & WINNIPISEOGEE PAPER CO., *Trs.*

In the absence of fraud, one of the parties to a special contract for hauling logs is not chargeable as trustee of the other with respect to matters arising out of the performance of the contract, unless such other party could maintain a suit in his own name against the party sought to be charged as his trustee.

FOREIGN ATTACHMENT.   Facts found by the court.   The writ was served on the trustees January 28, 1884.   The trustees had a

contract with the defendant to cut and haul the spruce timber from their lot in Warren to the railroad for $6.25 per thousand. They were to furnish him with teams and tools to use in performing the contract, and make advances in money for supplies. At the completion of the contract, or at the end of each logging season, if the trustees chose, the defendant was to take the teams and tools and pay the price originally agreed upon and charged, or return them to the trustees and pay whatever shrinkage there might be upon them. The advances were to be accounted for in payment for the work done. If the defendant should sell any of the teams, he was to pay the money received to the trustees, who were to furnish others in place of them, if necessary. At the date of the service of the writ upon the trustees, the defendant had sold some of the teams, and paid the money received for them to the trustees, and they had furnished him with others and with other material upon the same conditions and for the same purpose, so that the whole property then in his hands in that way amounted to $2,008.89. He had cut and hauled logs, and the trustees had paid him from time to time, and at that time there was due him from the trustees on account of the work done under the contract, not reckoning anything on account of the property in his hands, the sum of $239.88. The defendant went on and completed the contract before the first of April, 1884, and the trustees continued making payments without regard to the service of process upon them, and upon a settlement made April 10, 1884, had hauled timber enough to amount to $3,265.35 since the service of the writ on the trustees, which, with the amount due him for hauling at the time of the service, amounted in the whole to $3,505.23. This sum was allowed him on the settlement. He was charged by the trustees with various items, which accrued during the same time, amounting to $3,282.37, being for advances made under the contract; and the balance thus appearing to be due him for hauling they then paid him in cash.

Webster had no other means to pay for his supplies and help, and without the money paid by the trustees (excepting what was paid after completion of the contract) he could not have performed the contract. After the completion of the contract in the spring of 1884, with the knowledge of the trustees he advertised the teams and tools for sale at auction, and sold a considerable part, and paid the avails received to them, leaving a balance due them upon the property at its cost price, at which it was furnished Webster, of $816.26. In the following fall the part of the property remaining unsold was mortgaged by Webster to the trustees to secure the payment of that sum.

The court found and held that the trustees were chargeable for the amount due the defendant on account of the hauling at the date of the service of the writ on them, $239.88; or, if not chargeable for that sum, that they were chargeable for the amount of the

plaintiffs' judgment and costs on account of money in their hands belonging to the defendant, and by them paid to him after the service of process.   The trustees excepted.

*A. C. Osgood* and *Chase & Streeter*, for the plaintiffs.

*Daniel Barnard*, for the trustees.

SMITH, J.   This is an equitable proceeding.   In the absence of fraud, a trustee can be charged for only what, at the time of service, or afterwards, is equitably due to the defendant.   *Proctor* v. *Lane*, 62 N. H. 457, 463; *Forist* v. *Bellows*, 59 N. H. 229; *Brown* v. *Warren*, 43 N. H. 430; *Rand* v. *Railroad*, 40 N. H. 79, 87; *Swamscot Machine Co.* v. *Partridge*, 25 N. H. 369, 373, 374.   He can in general be charged for such sum only as the defendant could recover of him.

Here there is no suggestion of fraud, and the question is, whether at the time of service, or afterwards, the defendant could, under the contract, have recovered any sum of the trustees.   The contract was an entire one, for the season at least.   The trustees' obligation was not to pay $6.25 for each thousand feet of lumber when drawn, but whatever might be found due to the defendant on the whole contract at the end of the season.   When the defendant had drawn one thousand feet, the trustees did not owe him $6.25, though they had then advanced him nothing: no more did they owe him $625 when he had drawn one hundred thousand feet. They did not owe him, and he could not have recovered the sum of $239.88 stated to be due him when the writ was served.   Under the contract nothing was then due the defendant, and if he had sued on the contract, he would have failed for that reason.   If, abandoning the contract, he had sued on a *quantum meruit*, the trustees would have been entitled to recoup (1) their damages for the non-performance of the contract, and (2) the shrinkage on the materials.   If the writ were served after the end of the season, the trustees would be entitled to recoup against the amount which the logs came to at $6.25 per thousand, less advances, the shrinkage of the materials.   It might be that nothing in either case would be found due,—that is, no part either of the sum of $239.88 in one case, or of $222.74 in the other.   The defendant's obligation to take and pay for the teams and tools at the end of the season, or return them and pay the shrinkage, cannot be separated from the rest of the contract.   The defendant had the right to elect which he would do.   Of this right the service of this process did not and could not deprive him.

So the trustees' obligation to make advances for supplies was equally an inseparable part of the contract.   A neglect or refusal to make such advances as were reasonably necessary for that purpose would have been a breach of the contract, for which the

defendant might have recovered damages. The advances were not money due and owing the defendant. He could not have sued for and recovered the advances. His only remedies for a refusal to make them were (1) to sue for a breach, or (2) to rescind the contract.

It is claimed that at the settlement, April 10, 1884, the contract was completed, and the payment by the trustees of the sum of $222.74 was in settlement of what the trustees were owing the defendant after each party had performed all that the contract required of him. We do not so understand the facts. By the contract, Webster had the right to elect to take the property at the price originally agreed upon and charged, or to return it to the trustees and pay the shrinkage. The contract could not be completed until the election was made. The completion of the job of cutting and hauling and the completion of the contract are two different things. By "contract," as used in the case, was evidently meant completion of the cutting and hauling, because it distinctly appears that the contract was not completed April 10. The election (which party had it is probably not material) was not then made. The property had not then been returned to the trustees.

At the settlement, April 10, there was found due to Webster $222.74 for the cutting and hauling, a pair of horses kept by him, and the shrinkage on some oxen and fixtures being accounted for, leaving the matter of the great mass of the teams and tools unsettled. It is hardly conceivable that the sum of $158.13 was received by the trustees as the shrinkage on the teams and tools, a part of which sold directly after at a loss of $816.26. Nor is it so found in the case. By necessary implication, it is the contrary, when it is said,— " The trustees did not then elect to have the defendant buy and take the property remaining on hand, and it was the trustees' property. The purchase of the property by the defendant at the original cost was some time after that settlement: " that is, the property remained the trustees' as it was from the beginning. In other words, nothing was done about it.

Webster's agreement to pay the shrinkage or take the teams at the price agreed is not a separate and independent contract, but a part of the entire contract; and on his completion of the job of cutting and hauling, he was not entitled to recover what that came to at $6.25 per thousand feet without allowing the agreed price of the teams if he kept them, or allowing for their shrinkage if he returned them. The trustees should be discharged.

*Exceptions sustained.*

ALLEN, J., did not sit: the others concurred.