CATHARINE HILL, PLAINTIFF IN ERROR, *v.* JOSEPH W. TUCKER, EXECUTOR OF ABNER ROBINSON, DECEASED.

The relations or privity between executors and their testators in Louisiana, do not differ from those which exist at common law.

The interest of an executor in the testator's estate is what the testator gives him; that of an administrator, only that which the law of his appointment enjoins.

Hence, executors in different States are, as regards the creditors of the testator, executors in privity, bearing to the creditors the same responsibilities as if there was only one executor.

Although a judgment obtained against an executor in one State is not conclusive upon an executor in another State, yet it may be admissible in evidence to show that the demand had been carried into judgment, and that the other executors were precluded by it from pleading prescription or the statute of limitations upon the original cause of action.

Therefore, where a person appointed executors in Virginia, and also in Louisiana, and the creditors obtained judgments against the Virginian executors, without being able to obtain payment, and then sued the executors in Louisiana, the Virginian judgments were admissible evidence for the above-mentioned purposes.

The law of Louisiana bars, by prescription, all actions brought upon instruments negotiable or transferable by indorsement or delivery, unless such actions are brought within five years. But this does not include due-bills or judgments.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Eastern District of Louisiana.

Hill *v.* Tucker.

It was argued in conjunction with the succeeding case of Goodall *v.* Tucker, but the facts being somewhat different, they are reported separately.

On the 6th of December, 1842, Abner Robinson, of the city of Richmond, Virginia, made his last will, and appointed William R. Johnson and Joseph Allen, of Virginia, and Thomas Pugh and Joseph W. Tucker, of Louisiana, his executors.

On the 21st of December, 1842, the will was proved in Virginia, and letters testamentary granted to Johnson and Allen, the executors.

Tucker qualified as executor in Louisiana, but at what time the record did not show.

On the 29th of February, 1848, Catharine Hill filed her petition in the Circuit Court of the United States for the Eastern District of Louisiana against Tucker, as executor.

The proceedings in the Circuit Court, together with the points excepted to, are all stated in the opinion of the court, and need not be repeated.

It was argued in this court by *Mr. Johnson* and *Mr. Duncan*, for the plaintiff in error, and *Mr. Taylor*, for the defendant in error.

The points made by the counsel for the plaintiff were the following:

1. That the judgments in Virginia were evidence against the defendants, they being coexecutors with the defendants in such judgments. Stacy *v.* Thrasher, 6 How. 58; 1 Salk. 299; 1 Com. Dig. Adm'r, B. 9; 2 Bla. Com. 507; Dixon's Ex'rs *v.* Ramsay's Ex'rs, 3 Cra. 319, 1 Cond. Rep. 547; 3 Bac. Ab: Ex'rs and Adm'rs, p. 30, 52.

2. That if the judgments were not evidence, the plaintiffs were entitled to recover upon the original causes of action, they being proved, and not being barred by the Louisiana law of prescription. Article 3505 of the Civil Law says: " Actions on bills of exchange, notes payable to order or bearer, except bank-notes, those of all effects negotiable or transferable by indorsement on delivery, are prescribed by five years, reckoning from the day when these engagements were payable." Article 3517 provides that " a citation served upon one joint-debtor, or his acknowledgment of the debt, interrupts prescription with regard to all others, and even their heirs."

In Goodall's case the suit was brought on the 29th February, 1828, less than ten years after the bond sued upon matured.

In Louisiana ten years is the limitation, and the law upon the subject is always the law of the forum. Lacoste *v.* Benton, 3 La. An. Rep. 220; Spiller *v.* Davidson, 4 Id. 171; Graves *v.*

Routh, Adm'r, 4 Id. 127; Young *v.* Crossgrove, Id. 234, 235; Wheeling *v.* Preston, 12 Rel. 141; 2 La. An. Rep. 315, 646; Story's Conflict of Laws, 576.

In Hill's case the same authorities are referred to, and she had a right to sue in her own name, she having been recognized by the District Court as universal legatee, and being assignee of the judgments. 10 Mart. Rep. 117; 2 N. Series, 296.

*Mr. Taylor,* for defendant in error.

Upon the trial of the cause, the court decided, as if instructing a jury, these two propositions:

1st. That the Virginia judgment against Joseph Allen and William R. Johnson, executors of the last will and testament of Abner Robinson, appointed and qualified under the will in Virginia, was not evidence against the defendant; and

2d. That the original cause of action as to the defendant was barred by prescription, and the plaintiff excepted to the two decisions. If there be no error in these decisions, the judgment of the court below must be affirmed.

I. In Louisiana, testamentary executors are merely administrators, in the most limited sense of the term. They have none of the qualities, capacities, or rights of executors under the common law. No argument, however extended, would make this clearer than a simple reference to the articles of the Louisiana Code, relating to the administration of estates of decedents under the authority of law. Articles 1091, 1106 to 1123, 1126 to 1148, provide for the appointment of persons to administer the estates of persons dying intestate. Articles 1651 to 1655, 1670, 1671 and 1672, 1659, 1661, 1662, 1663 1666 to 1668 provide for the appointment of persons to administer the estates of persons who leave testaments, and define their powers. From an examination of these articles, it will be at once apparent that a testamentary executor differs in no respect, so far as to his rights, powers, and duties, from the ordinary administrator. And if this be true, then it is certain that the record in question could not be evidence against the defendant, for, as the learned Story has remarked in his Conflict of Laws, sect. 522, " When administrations are granted to different persons, in different States, they are so far deemed independent of each other, that a judgment obtained against one will furnish no right of action against the other, to affect assets received by the latter in virtue of his own administration; for in contemplation of the law there is no privacy between him and the other administrator." Without citing other authorities on this point, I will merely refer to the case of Stacy *v.* Thrasher, decided by this court, (6 Howard, 58,) in which the doctrine is fully recognized. See De-

Hill *v.* Tucker.

neale *v.* Stumps's Ex'rs, 8 Peters, 531. If it be true, as there stated by Chief Justice Marshall, that "it is understood to be settled in Virginia, that no judgment against the executors can bind the heirs, or in any manner affect them," and that "it could not be given in evidence against them," it is not easy to perceive that there was error in this decision.

II. The law of the forum applies as to prescription. Code of Practice, 13; Story's Conflict of Laws, sect. 576, 578; LeRoy *v.* Crowninshield, 2 Mason, 151; Huber *v.* Steiner, 29 Eng. C. L. Rep. 308, (2 Bingh. N. C. 202.)

Actions "on all effects negotiable or transferable by indorsement or delivery, are prescribed by five years, reckoning from the day when these engagements were payable." C. C. of La. 3505. And this prescription runs "against persons residing out of the State." C. C. 3506.

To make our law of prescription applicable, it is necessary that the obligation sued on be one transferable by indorsement or delivery, and the question whether it be in fact so transferable is to be decided by the law of the place where the contract was entered into. Story's Conflict of Laws, sect. 242; Code of Practice of La. 13. Is the bond sued on negotiable or transferable by indorsement or delivery? This must be determined by the common law, as received and in force in the State of Virginia, where the instrument under consideration was executed.

I will not weary the court by going into an examination of the original effects of assignments of incorporeal rights under the common law, or of the modes of enforcing them. Nor will I give an account of the origin and peculiar character of bills of exchange, growing out of the necessities of trade. It is sufficient for my present purpose to remark that promissory notes, notwithstanding the exigencies of commerce, did not acquire this peculiar feature, — the capacity of being transferred by indorsement or delivery, — until it was given to them by the statute of Anne, when, for the first time under the common law, they were made assignable at law, and were placed on the same footing as bills of exchange. Bonds and other instruments in writing were made assignable in the same manner in Virginia, by statute, in 1748, which was confirmed by the act of 1786. 1 Rev. Code, 484. Such bonds as the one sued on became, from the adoption of these statutes in Virginia, transferable by simple indorsement, or by mere delivery. Seymour *v.* Van Slyck, 8 Wend. 421; Downing *v.* Backenstoes, 3 Caines, R. 136. And the very point has been determined in Virginia. Makies's Ex'rs *v.* Davis, 2 Washington, 219; Drummond *v.* Crutcher, Id. 218.

Mr. Justice WAYNE delivered the opinion of the court.

This case was brought up, by writ of error, from the Circuit Court of the United States for the Eastern District of Louisiana.

It was argued with the case of Goodall *v.* Tucker, but the facts being somewhat different, and the prayers to the court not exactly alike in both cases, it will be necessary to consider them separately.

First then as to Catharine Hill's case.

She filed a petition in February, 1848, in the Circuit Court of the United States for the Eastern District of Louisiana against Tucker, the executor of Robinson. She was the widow and sole devisee of James P. Wilkinson, who resided in Richmond, Virginia, and after his death intermarried with Hill, by whose authority she prosecuted this suit.

Robinson lived also in Richmond, although his property was chiefly situated in Louisiana. In December, 1842, Robinson died in Richmond, having made a will a few days before his death, and appointed, as executors, William R. Johnson and Joseph Allen, of Virginia, and Thomas Pugh and Joseph W. Tucker, of Louisiana. Johnson and Allen qualified as executors in Virginia, and Tucker in Louisiana.

The causes of action, in the suit brough by Catharine Hill, were the four following, which will be separately noticed under the letters A, B, C, D,

[A] On the 9th of December, 1839, Archer Cheatham made a promissory note, payable ninety days after date, promising to pay to the order of Abner Robinson and Isham Puckett, one thousand dollars, negotiable and payable at the Bank of Virginia. It was indorsed by Robinson and Puckett, and came into the possession of Wilkinson. Not being paid at maturity, it was protested.

In March, 1840, Wilkinson brought an action against the drawers and indorsers in the Circuit Superior Court of Henrico county, Virginia, and recovered a judgment.

In July, 1840, he issued an execution, which, in August, was suspended until further orders. Cheatham and Puckett soon afterwards took the benefit of the Bankrupt Act passed by Congress. Nothing further was done as to this claim until Catharine Hill filed her petition as above stated.

[B] On the 20th of November, 1840, Robinson gave the following due-bill.

" $575. Richmond, November 20, 1840. Due James P. Wilkinson, for value received (viz., cash loaned) five hundred and seventy-five dollars. Given under my hand this day and date as above written. Abner Robinson."

In February, 1843, Wilkinson brought a suit in the Henrico

County Court, against Johnson and Allen, the Virginia executors of Robinson, and in the ensuing June obtained a judgment. A *fi. fa.* was issued, but the return was " no effects found."

[C]. On the 19th of August, 1842, Robinson made the following single bill.

" $200. Richmond, August 19th, 1842. Due James P. Wilkinson, two hundred dollars for money borrowed this day, as per check on the Farmers Bank of Virginia, of the same date, &c. Given under my hand and seal as above. Abner Robinson. (Seal.)"

In February, 1843, Wilkinson brought a suit against Johnson and Allen, upon this bill, and obtained a judgment in the following June. A *fi. fa.* was issued upon this and the same return made as in the preceding cases, viz. " no effects found."

[D] In October, 1843, one Bolling S. Dandridge brought a suit against Robinson for two hundred dollars, being one year's wages as overseer. After Robinson's death, it was revived against his executors. In August, 1843, Dandridge obtained a judgment, and issued a *fi. fa.;* but the same return was made as above, viz. " no effects found." On the 1st of February, 1845, Dandridge assigned this judgment and execution to Wilkinson.

Not long after this, Wilkinson died. The record does not show when, but in April, 1846, a succession was opened in Louisiana, upon his estate, and after sundry proceedings in opposition, which it is not material to mention, his widow, Catharine, was recognized as the rightful representative of the estate. But this did not take place until May, 1847. In the mean time she had taken out letters testamentary in Virginia, in August, 1846, and married Hill in December, 1846.

On the 29th of February, 1848, Catharine Hill filed her petition against Tucker, in the Circuit Court of the United States for the Eastern District of Louisiana, claiming the several sums of money mentioned in the four preceding classes.

Tucker filed his answer, alleging " that the judgments set forth were obtained in Virginia, in proceedings to which, he, in his capacity of executor, was no party, and that they are therefore not binding on the succession of Robinson in Louisiana. That on one of the obligations, to wit, that made by Cheatham for $1,000, dated 9th December, 1839, Robinson, if he indorsed at all, was joint indorser with one Puckett, and was in law bound only for one half of the sum. That the actions on the demands upon which these judgments rest, are barred by the prescription of five years."

The cause came up for trial before the court without a jury, in November, 1849, when a judgment was given against Tucker. This was afterwards stricken out and a new trial granted.

Tucker then filed a supplemental answer by way of peremptory exceptions to the petition, as a plea of prescription. It stated, in substance, that as to the judgment for $1,000 against Robinson, which was rendered during his lifetime, the plea of limitations was interposed; that Allen and Johnson were qualified as executors in Virginia, on the 21st of December, 1842, and that more than five years elapsed between the date of such qualification and the institution of this suit; and that by the statute of limitations of the State of Virginia, the claim was barred by the expiration of five years.

In May, 1850, the cause came up for argument a second time before the court. At the trial, the causes of action designated as B, C, and D, were proved by evidence in Virginia, taken under a commission, and records of the court as to the several judgments were given in evidence. The other facts, above stated, were also proved.

After the evidence was closed the plaintiff asked the court to decide, as if instructing a jury upon the evidence, as follows:

"1st. The testator, Robinson, resided and died in Virginia, leaving a will, which was duly proven in the proper tribunal after his death, in and by which he appointed the defendant and others his executors, and two only of his executors made probate, and qualified in the proper court in Virginia; and if suits were instituted by the plaintiff, and by others who have assigned their judgments and the causes of action on which their judgments were founded to the plaintiff, against the executors of Robinson, who qualified in Virginia, and obtained judgments against those executors in the appropriate courts of Virginia having jurisdiction of such matters; and if upon those judgments executions issued and were returned by the proper officers in substance *nulla bona*; and if the defendant, a citizen of Louisiana, who never qualified as executor in Virginia, is a co-executor of the same estate, who has proved the will in Louisiana, and taken on himself the execution thereof in Louisiana, has in hands ample assets in Louisiana, to pay all debts; and if the evidence fully establishes these facts, that then the judgments so rendered in Virginia, are evidence against the executor in Louisiana in this suit.

2d. That by the laws of Louisiana judgments are assignable, and that upon assigned judgments the assignee can maintain an action in his or her own name therefor.

3d. That under such a will as that of Robinson, produced in this cause, the co-executors, although in different States, that qualified and acted, derived the same powers from the same source over the same estate, and that unlike administrators, they are to such estate of the decedent privies in estate; and the

exemplifications of the records of the courts of Virginia, duly au-
thenticated, which have been read in this cause, showing judg-
ments against the only executors of Robinson who qualified in
Virginia, in the appropriate court of probate of the domicil of
the deceased, are evidence against the co-executor who qualified
in Louisiana, and holds abundant assets in Louisiana.

4th. That if plaintiff were not entitled to recover against de-
fendant on the production of the records showing the judgments
against the co-executors in Virginia, and that those judgments
were unsatisfied, because of a lack of assets in the hands of the
Virginia executors to satisfy the same, that they would be enti-
tled to recover, on producing the further evidence to prove that
those judgments in Virginia were rendered on good and valid,
and subsisting and unsatisfied, causes of action against the tes-
tator, Robinson.

5th. That the plaintiff has produced sufficient proof of the
several causes of action, on which the judgments read in evi-
dence were founded, to justify a jury in finding for the plaintiff
upon those several original causes of action.

6th. That the several causes of action set forth in the peti-
tion, independent of the judgments rendered thereon against the
co-executors in Virginia, are not, upon the testimony in this
cause, barred by prescription.

7th. That upon all the evidence in this cause a jury might and
should find a verdict for the plaintiff.

8th. That the several suits in Virginia, of which the records
have been read, operated as a judicial interpellation to stop the
running of prescription upon those several demands in favor of
the defendant.

And the defendant objected to said several propositions, and
the court sustained his objections, and decided all and each of
the several propositions against the plaintiff, except the aforesaid
proposition, No. 2; and to each of said decisions separately the
plaintiff excepted.

And the defendant asked the court to decide —

1st. That no one of the records, read to the court in this cause,
showing judgment against his co-executors in Virginia, was evi-
dence against the defendant.

2d. That each and every one of the causes of action, set forth
in the petition, and, to which evidence had been adduced, was
barred as to said defendant by prescription.

3d. That upon the whole evidence offered the plaintiff was not
entitled to recover; and that upon the evidence a jury could
rightfully, and should, find a verdict for the defendant; to each
of which plaintiff objected.

And the court overruled the several objections of plaintiff, and

decided as asked by the defendant; and to each of said opinions of the court, the plaintiff excepted."

We cannot concur in the suggestion made in the argument of this case, that the relations or privity between executors and testators in Louisiana differ from such as exist at common law. Louisiana, in her code, without adopting the terms of the civil law, makes the same distinction as is made at common law, between one called upon to administer the estate of an intestate, and one appointed to the office of executor by a testator. The responsibilities of both, as to the manner of settling the estate which they represent, depend upon the law of the State; but the relation between executor and testator is altogether different. The executor's interest in the testator's estate is what the testator gives him. That of an administrator is only that which the law of his appointment enjoins. The testator may make the trust absolute or qualified in respect to his estate. It may be qualified as to the subject-matter, the place where the trust shall be discharged, and the time when the executor shall begin and continue to act as such. He may be executor for one or several purposes — for a part of the effects in possession of the testator at the time of his death, or for such as may be in action, if it be only for a debt due. But though the executor's trust or appointment may be limited, or though there are several executors in different jurisdictions, and some of them limited executors, they are, as to the creditors of the testators, executors in privity, bearing to the creditors the same responsibilities as if there was only one executor. The privity arises from their obligations to pay the testator's debts, wherever his effects may be, just as his obligation was to pay them. The executor's interest in the testator's estate is derived from the will, and vests from the latter's death, whatever may be the form which the law requires to be observed before an executor enters upon the discharge of his functions. When within the same political jurisdiction, however many executors the testator may appoint, all of them may be sued as one executor for the debts of the testator, and they may unite in a suit to recover debts due to their testator, or to recover property out of possession.

All of them, then, having the same privity with each other and to the testator, and the same responsibility to creditors, though they may have been qualified as executors in different sovereignties, an action for a debt due by the testator, against any one of them in that sovereignty where he undertook to act as executor, places all of them in one relation concerning it, and as to the remedies for its recovery: what one may plead to bar a recovery, another may plead; and that which will not bar a recovery against any of them, applies to all of them. Between adminis-

trators deriving their commissions to act from different political
jurisdictions, there is no such privity.    This court has treated of
this fully in two cases : In the case of Aspden and others *v.*
Nixon and others, 4 How. 467, and in Stacy *v.* Thrasher,
6 How. 44.    We refer to the former without citing any part of
it, but it is full upon the point, and may be instructively read.
But we shall cite a passage from Stacey *v.* Thrasher on account
of its appropriateness to what has just been said in respect to
the want of privity between administrators deriving their powers
in different jurisdictions.

" An administrator under grant of administration in one State
stands in none of these relations — of privity — to another ad-
ministrator in another State.    Each is privy to the testator, and
would be estopped by a judgment against him, but they have
no privity with each other in law or estate.    They receive their
authority from different sovereignties, and over different property.
The authority of each is paramount to the other.    Each is ad-
ministrator to the ordinary from which he receives his commis-
sion.    Nor does the one come by succession to the other into the
trust of the same property, incumbered by the same debts, as in
the case of an administrator *de bonis non*, who may truly be said
to have an official privity with his predecessor in the same trust,
and therefore liable to the same duties."    In that case, as a con-
sequence of such reasoning, it was determined that an action
of debt will not lie against an administrator in one of the United
States, on a judgment obtained against a different administrator
of the same intestate, appointed under the authority of another
State.

For the same reasons, notwithstanding the privity that there
is between executors to a testator, we do not think that a judg-
ment obtained against one of several executors would be con-
clusive as to the demand against another executor, qualified in
a different State from that in which the judgment was rendered.
But such a judgment may be admissible in evidence in a suit
against an executor in another jurisdiction, for the purpose of
showing that the demand had been carried into judgment in
another jurisdiction, against one of the testator's executors, and
that the others were precluded by it from pleading prescription
or the statute of limitations upon the original cause of action.
Such is the case certainly in Louisiana, as may be seen from
the case of Jackson *v.* Tiernan, in 15 Louis. Rep. 485.    The
Supreme Court of that State, speaking by Judge Martin, says,
that the plea of prescription cannot prevail in behalf of one
joint debtor, if a suit has been brought against another in the
Circuit Court of the United States for the District of Maryland
meaning thereby, we presume, if it had been commenced in any

other court in the United States. When, then, the court below rejected, as inadmissible in evidence in this case, the judgment obtained in Virginia against Allen and Johnson, the executors of Robinson in that State, we think it erred, and that it should have been admitted for the purposes mentioned. The court also instructed the jury, that the causes of action in this suit against Tucker, the co-executor of Allen and Johnson, were barred by prescription. In this we think there was error. The article of her code upon which that instruction was given, 3505, is in these words : " Actions on bills of exchange, notes payable to order or bearer — except bank notes — those of all effects negotiable or transferable by indorsement or delivery, are prescribed by five years, reckoning from the day when these engagements are payable." It is not applicable to either of the causes of action set out in the plaintiff's petition. It is not so to Cheatham's note, indorsed by Robinson, because, being carried into judgment in Robinson's lifetime, it estops all his executors anywhere, from denying it, and obliges them to pay it out of his assets wherever they may be. So it would be if, instead of executors, they were administrators in different States, as was said in Stacey and Thrasher's case, that each administrator is privy to the testator, and would be estopped by a judgment against him. The prescription of Louisiana, also, is not applicable to the due-bill given by Robinson to Wilkinson, for $575, or to that for $200 for money borrowed from Wilkinson, neither of them being negotiable by the law of Virginia or by the law of Louisiana, and therefore not within the article of prescription. For the same reason it is not applicable to the judgment obtained by Dandridge for $200, for overseer's wages due by Robinson, and which was assigned to Wilkinson. In this view of the case, we shall direct the judgment given by the court below to be reversed, and that the case shall be remanded for further proceeding, in conformity with this opinion.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs ; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to proceed therein in conformity to the opinion of this court.