### CORAM et al. v. INGERSOLL.

(Circuit Court of Appeals, First Circuit. October 16, 1906.)

#### No. 610.

1. JUDGMENTS—RES JUDICATA—JUDGMENT ON THE MERITS.

 A judgment of dismissal by a state court of Montana, entered on the sustaining of a statutory objection to the admission of any evidence under the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, is equivalent to one upon general demurrer, and is a judgment on the merits which is a conclusive bar to further litigation of the subject-matter of the action between the parties or their privies in another jurisdiction.

2. SAME.

 In an action on a contract in a state court, the court sustained a statutory objection to the introduction of any evidence under the complaint,

on the ground that it did not state facts constituting a cause of action, and entered a judgment of dismissal. On appeal the Supreme Court of the state affirmed such judgment in an opinion which construed the contract and held that the facts alleged in the complaint did not show a performance which entitled the plaintiff to recover. *Held*, that the judgment was on the merits, and was a bar to a second action on the contract between the parties or their privies.

3. SAME—PRIVITY OF PARTIES—ADMINISTRATORS.

Where an ancillary administrator brings an action on a chose in action properly deemed assets of the estate in his jurisdiction, and a judgment is rendered against him on the merits, such judgment is conclusive in favor of the defendants everywhere, and a second suit cannot be maintained against them on the same cause of action by an ancillary administrator of the estate in another jurisdiction.

Aldrich, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 136 Fed. 689.

See 132 Fed. 168.

Louis D. Brandeis (Thaddeus D. Kenneson and William H. Dunbar, on the brief), for appellants.

Edgar N. Harwood (John H. Hazelton and Hollis R. Bailey, on the brief), for appellee.

Before COLT and LOWELL, Circuit Judges, and ALDRICH, District Judge.

LOWELL, Circuit Judge. Andrew J. Davis died a citizen of Montana, leaving property both in Montana and in Massachusetts. John A. Davis, one of his next of kin, offered for probate in Montana a will which gave to him nearly the whole of this property. Certain other next of kin, desiring to contest the will, retained as counsel Robert G. Ingersoll, a citizen of New York, the plaintiff's intestate. Shortly afterwards two of these clients agreed with him in writing for his employment, and for a fee of $100,000 conditioned upon the defeat of the will.

The validity of the will was tried in Montana, and the jury disagreed. Thereafter a compromise was entered into, by which Ingersoll's clients became entitled to a larger share of the Davis estate than would have fallen to them in intestacy. Only $5.000 was paid to Ingersoll. His widow, as ancillary administratrix of his estate in Massachusetts, brought this bill in equity to obtain a decree against one of the defendants personally for the payment of the contingent fee, and to establish a lien upon some part of the Davis estate in Massachusetts. On final hearing, the Circuit Court entered a decree for the complainant, from which the defendants have appealed. We need consider only one of their contentions, viz., that the complainant is barred by a judgment in their favor entered in Montana. In order that this defense shall avail them, the defendants must show that the Montana judgment relied on was rendered (1) for the same cause of action; (2) upon the merits; (3) between the same parties or their privies.

The present complainant, as administratrix of Ingersoll in New York, brought an action in Montana against the defendants in the

case at bar. In addition to an allegation of the facts above stated, her complaint set out that Ingersoll had rendered the services for which the fee was to be paid, that his services had procured the compromise, and had defeated the will of Andrew J. Davis, so far as the defendants were concerned, whereby Ingersoll became entitled to the contingent fee as provided in the agreement, and to an equitable lien on the defendant's interest in the estate. An amendment added an allegation that, by reason of Ingersoll's prosecution of the suit to break the will, the representatives of John A. Davis were constrained to consent to the compromise, and that Ingersoll "counselled, advised, and aided in the making and effectuating the said compromise agreement." The plaintiff in the Montana suit made substantially the same case as that set out in the present bill. The cause of action was the same in both suits.

After Mrs. Ingersoll had begun suit in Montana, Harris was duly appointed Ingersoll's administrator in that state, and, on motion of Mrs. Ingersoll, the original plaintiff in the Montana proceeding and the complainant here, he was substituted for her as plaintiff in the former suit.

The defendant's answer in that suit denied that Ingersoll performed the services contemplated in the agreement, that his services procured the compromise, and that his prosecution of the suit to break the will constrained the representatives of Davis to consent thereto. It set up the statute of limitations of Montana, and further alleged that during Ingersoll's lifetime he, together with Root and Coram, two of the defendants, upon a valuable consideration paid to Ingersoll by Root and Coram, "canceled, revoked, satisfied, and held for naught" the agreement upon which the suit in Montana and this bill are founded. The plaintiff Harris in his "reply" denied that the contract was canceled or revoked in any sense. In the district court of the Second judicial district of the state of Montana, in and for the county of Silver Bow—

"The parties hereto being present in court as on Wednesday, December 10, 1902, and the jury being present and answering to their names, the further trial herein is by the court resumed now. the opening statement on the behalf of plaintiff is resumed, and, being concluded, the introduction of testimony on behalf of plaintiff is commenced. Come now defendants, and object to the introduction of any and all testimony on behalf of plaintiff upon the grounds that the complaint does not state facts sufficient to constitute a cause of action. After argument of counsel the motion to exclude testimony is by the court sustained, to which ruling of the court plaintiff by counsel duly excepts and is by the court granted 30 days' additional time to prepare and serve bill of exceptions herein, and upon motion of counsel for defendants the complaint herein is by the court ordered dismissed. * * * Whereupon the jury herein is discharged from further attendance of this cause."

Thereafter judgment was rendered as follows:

"This cause having come on regularly for trial on the eleventh day of December, 1902, the parties appearing by their respective attorneys, and an objection having been made to the introduction of any evidence on the ground and for the reason that the amended complaint in said cause does not state facts sufficient to constitute a cause of action, and said objection having been considered by the court and sustained: Now, therefore, in consideration of the premises aforesaid and the law, it is ordered, adjudged, and decreed that

the said action be dismissed and that the defendants recover of and from the plaintiff their costs and disbursements incurred herein, amounting to the sum of $12.50. Done in open court this twelfth day of December, 1902."

The bill of exceptions does not appear in our record, but the case was taken to the Supreme Court of Montana.

The only question presented to that court, under the ruling of the court below and the plaintiff's exception thereto, was this: Did the complaint set forth facts sufficient to constitute a cause of action? On the one hand, the plaintiff contended that the compromise of the litigation was a defeat of the will, so far as Ingersoll's clients were concerned, and that the final decree which provided for a payment to the contestants of all they had claimed, although brought about by a compromise, was yet a complete performance by Ingersoll of the condition of the contract, and so entitled him to recover the stipulated fee. On the other hand, the defendants contended that the contract was conditioned upon a decree for the contestants setting aside the will; that the complaint itself showed that the payment to the contestants resulted, not from a successful contest, but from a compromise of the contest—in other words, that the contract gave Ingersoll his contingent fee only if he conducted the contest to a successful termination, and that it did not provide for his payment in case the litigation was compromised by the parties, and the will admitted to probate—that the failure to continue the litigation and the subsequent resort to negotiation and compromise, as set forth in the bill, were in effect an abandonment of the contract, and left to the plaintiff only the right to recover upon a quantum meruit for services other than those mentioned therein.

After stating the facts as alleged in the complaint, the opinion of the Supreme Court of Montana began thus:

"The action of the court in sustaining the defendants' objections to the evidence presents for decision the question whether the allegations in the complaint, which we have stated in substance, warrant recovery by the plaintiff. The complaint declares upon the contract, and unless it appears therefrom that the plaintiff's intestate fully performed the contract on his part, or facts and circumstances are alleged justifying a failure in any particular, a recovery cannot be had."

The court analyzed the contract and adopted the defendants' construction of it. The opinion went on to declare that neither by his general retainer nor by the terms of the contract had Ingersoll authority to compromise the controversy, but only to prosecute the suit. Therefore his fee was payable only upon a favorable decree, followed by an actual distribution. When authority to compromise was conferred upon him, there was "a mutual abandonment of the contract," and "when the compromise was consummated the contract could not be performed." "The allegations of the complaint fall very far short of showing an entire performance of the contract." The mutual abandonment of the contract to which the court referred was that exhibited by the allegations of the complaint itself, and had nothing to do with the alleged cancellation of the contract for a valuable consideration set up in the answer and denied in the replication. From the opinion of the Supreme Court it thus plainly appears that the judgment of that court in favor of the defendants was based altogether upon the case

presented by the complaint. No evidence and no amendment consistent with that complaint could have altered that judgment. If the contract made Ingersoll's fee contingent upon a defeat of the will by a successful contest (which was the interpretation put upon the contract by the Montana court), then Ingersoll never performed his contract, and could not maintain suit for the $100,000 fee. The Montana judgment was therefore based upon no formal defect in the plaintiff's pleadings, but upon the substantial want of merit in his cause of action.

If we pass to more technical considerations, we shall find that the defendants' objection "to the introduction of any and all testimony on behalf of plaintiff upon the grounds that that complaint does not state facts sufficient to constitute a cause of action" was in effect a demurrer; and, at common law, a judgment upon a demurrer is deemed to be a judgment upon the merits. Gould v. Railroad, 91 U. S. 526, 533, 23 L. Ed. 416; Bissell v. Spring Valley Township, 124 U. S. 225, 8 Sup. Ct. 495, 31 L. Ed. 411; Green v. Sanborn, 150 Mass. 454, 23 N. E. 224. This is also the law of Montana, provided the demurrer goes to the merits. Kleinschmidt v. Binzel, 14 Mont. 31, 52, 35 Pac. 460, 43 Am. St. Rep. 604. Sections 1004 and 1005 of the Montana Code of Civil Procedure provide that, with exceptions inapplicable here, all judgments shall be upon the merits. In U. S. v. Parker, 120 U. S. 89, 96, 7 Sup. Ct. 454, 30 L. Ed. 601, a statute of Nevada was construed, similar to the Montana statute mentioned above, and the Supreme Court held that all judgments, save those specifically excepted, were rendered on the merits. That the defendants' objection above referred to is deemed a demurrer in Montana further appears from the decided cases. Wilson v. Harris, 21 Mont. 374, 54 Pac. 76; Haupt v. Indian Teleg. Co., 25 Mont. 122, 63 Pac. 1033. So, also, the similar practice by which, after answer, the plaintiff prays for "judgment on the pleadings." Horsky v. Moran, 13 Mont. 250, 34 Pac. 360; Floyd v. Johnson, 17 Mont. 469, 43 Pac. 631; Hibernia S. & L. Soc. v. Thornton, 117 Cal. 481, 482, 49 Pac. 573; Wangenheim v. Graham, 39 Cal. 169, 175. In Haug v. Great Northern Railroad, 102 Fed. 74, 42 C. C. A. 167, decided by the Circuit Court of Appeals in a case coming from North Dakota, where the practice seems to be like that in Montana, the court treated a motion to dismiss for the reason that the "complaint does not state facts sufficient to constitute a cause of action" as a judgment upon the pleadings, and put itself in agreement with the Supreme Court of Montana by stating that "a motion for judgment on the pleadings is in effect a demurrer, and, if sustained by the court and final judgment entered thereon, it has the same effect as if the demurrer to the complaint had been sustained and final judgment entered in favor of the party demurring." The court went on to observe that a judgment on the pleadings is a final judgment, which cannot be collaterally attacked, and it held that a judgment of dismissal like that rendered by the court in Montana in the case at bar could be set up as res judicata to an action subsequently brought. To like effect is In re Reynolds (D. C.) 133 Fed. 585, 127 Fed. 760, decided by the United States District Court in Montana. The judgment of the Montana court was rendered upon

the merits. On this point we find ourselves in agreement with the learned judge in the Circuit Court.

We next consider if the judgment was rendered in a proceeding between the parties here before us. The defendants in the Montana suit were the defendants in the case before us. The complainant there defeated was Harris, Ingersoll's administrator, appointed in Montana. As has been stated, the complainant here is Mrs. Ingersoll, his administratrix appointed in Massachusetts. Is the former in privity with the latter so that a judgment against him binds her? To answer the question we must examine in some detail the doctrine of the privity of parties. If Ingersoll had sued these defendants in Montana in a court of competent jurisdiction, or had there been sued by them, a judgment in his favor or against him, either as plaintiff or as defendant, would have bound him and the defendants everywhere. After his death his executors and administrators everywhere, speaking generally, would take the benefit or the burden of the judgment, as the case might be, because all of them would be in privity with him as their testator or intestate.

Let us next suppose that Ingersoll had died before suit brought in Montana, leaving no judgment in his favor or against him, but only a chose in action wherein he was debtor or creditor. Let us suppose that his executor or administrator appointed in Montana sued there on this chose in action and recovered judgment as plaintiff. What would be the effect of this judgment upon the rights of his executor or administrator appointed in Massachusetts? The executor and the administrator represent their testator or intestate, so that both are in privity with him. But there may be several executors and administrators, each appointed in a different jurisdiction. The authority of the executor to represent his testator and administer his goods is derived from the concurrent operation of the will and of the court of probate. The authority of the administrator is derived from the latter only. Every probate court, speaking generally, has jurisdiction of property found in its state. How far is administration in the several states independent, and how far does the act of one executor or administrator bind another?

That an executor in one jurisdiction is to some extent in privity with an executor appointed in another jurisdiction has been decided. Hill v. Tucker, 13 How. 458, 14 L. Ed. 223; Goodall v. Tucker, 13 How. 469, 14 L. Ed. 227; Carpenter v. Strange, 141 U. S. 87, 11 Sup. Ct. 960, 35 L. Ed. 640. How far this privity extends we need not here consider. Here we are dealing not with executors, but with administrators.

The case of an administrator is not that of an executor. In Stacy v. Thrasher, 6 How. 44, 12 L. Ed. 337, it was said:

"An administrator under grant of administration in one state stands in none of these relations to an administrator in another. Each is privy to the testator, and would be estopped by a judgment against him; but they have no privity with each other, in law or in estate. They receive their authority from different sovereignties, and over different property. The authority of each is paramount to the other. Each is accountable to the ordinary from whom he receives his authority. Nor does the one come by succession to the other into

the trust of the same property, incumbered by the same debts, as in the case of an administrator de bonis non, who may be truly said to have an official privity with his predecessor in the same trust, and therefore liable to the same duties." 6 How. 59, 60.

The law regards the estate of an intestate as divided between the different jurisdictions in which it is situated. The administrator represents his intestate only as to the property within the jurisdiction of the court which appointed him. Thus in Stacy v. Thrasher the court said further:

"Each administrator is severally liable to pay the debts of the deceased out of the assets committed to him, and therein they resemble joint and several co-obligors in a bond. A judgment against one is no merger of the bond, nor is it evidence in a suit against the other. Their common liability to pay the same debt creates no privity between them, either in law or in estate. It is for those who assert this privity to show wherein it lies, and the argument for it seems to be this: That the judgment against the administrator is against the estate of the intestate, and that his estate, wheresoever situate, is liable to pay his debts. Therefore the plaintiff, having once established his claim against the estate by the judgment of a court, should not be called on to make proof of it again. This argument assumes that the judgment is in rem, and not in personam, or that the estate has a sort of corporate entity and unity. But this is not true, either in fact or in legal construction. The judgment is against the person of the administrator, that he shall pay the debt of the intestate out of the funds committed to his care. If there be another administrator in another state, liable to pay the same debt, he may be subjected to a like judgment upon the same demand, but the assets in his hands cannot be affected by a judgment to which he is personally a stranger. A judgment may have the 'effect' of a lien upon all the defendant's lands in the state where it is rendered, yet it cannot have that effect on lands in another state by virtue of the faith and credit given to it by the Constitution and act of Congress. The laws and courts of a state can only affect persons and things within their jurisdiction. Consequently, both as to the administrator and the property confided to him, a judgment in another state is res inter alios acta. It cannot be even prima facie evidence of a debt; for, if it have any effect at all, it must be as a judgment, and operate by way of estoppel." 6 How. 60, 61.

To the same effect are McLean v. Meek, 18 How. 16, 15 L. Ed. 277; Johnson v. Powers, 139 U S. 156, 159, 11 Sup. Ct. 525, 35 L. Ed. 112; Low v. Bartlett, 8 Allen, 259.

Had Ingersoll been indebted to these defendants, and had they recovered judgment in Montana against Harris, his administrator appointed there, they could not have enforced that judgment here against Mrs. Ingersoll, the Massachusetts administratrix. If judgment had gone in favor of Harris in a suit brought by them against him in Montana, it would not have availed Mrs. Ingersoll, sued by them on the same claim in Massachusetts.

But within his jurisdiction, and as to the property there situated, the "authority of each is paramount to the other." 6 How. 59. All property, according to its locality, is deemed to pass to some one administrator, and, having been taken into his possession, it is wholly within his contro. and beyond the control of any other. His dealing with that property binds it not only in his jurisdiction, but everywhere it may be carried. If he sells a horse, the vendee may take it to another jurisdiction, and may hold it against the administrator appointed there. If property situated in the jurisdiction of his appointment be taken

from an administrator, the courts have held that he may follow it into another jurisdiction and there sue to recover it. Crawford v. Graves, 15 La. Ann. 243; Adams v. Batchelder, 173 Mass. 258, 259, 53 N. E. 824, 73 Am. St. Rep. 282. If the Montana administrator had transferred a note due from a resident of Montana, the transfer would be valid as against all other administrators appointed elsewhere. Wilkins v. Ellett, 108 U. S. 256, 259, 2 Sup. Ct. 641, 27 L. Ed. 718. If the Montana administrator had discharged a note which was assets in his hands, no administrator elsewhere could have sued upon it. Slocum v. Sanford, 2 Conn. 533.

Accordingly, if an administrator sues upon a chose in action which is deemed to be assets in his jurisdiction, and by recovery merges the chose in action in a judgment, that judgment is assets in his hands, and may be sued upon elsewhere, even in a jurisdiction where he could not have brought suit upon the original claim. Biddle v. Wilkins, 1 Pet. 686, 7 L. Ed. 315; Moore v. Petty, 135 Fed. 668, 68 C. C. A. 306; Talmage v. Chapel, 16 Mass. 71. That the administrator's suit upon the judgment recovered may or must be brought in his own name, without qualification as administrator, is a requirement merely formal. Hence it follows that, if Harris had recovered judgment in the Montana suit, he could have sued thereon in Massachusetts, notwithstanding the present complainant's appointment as administratrix here.

Furthermore, it has been held that, if one administrator has brought suit upon a chose in action situated in his jurisdiction, this suit is a bar to a suit brought upon the same claim by another administrator in his jurisdiction. Sulz v. Mutual Reserve Fund, 145 N. Y. 563, 40 N. E. 242, 28 L. R. A. 379; Merrill v. New England Mutual Life Insurance Co., 103 Mass. 245, 249, 4 Am. Rep. 548. This is true, though the original chose in action might have been deemed assets indifferently in either jurisdiction. 145 N. Y. 572, 573, 40 N. E. 242, 28 L. R. A. 379. The New York case in effect is like the case at bar; for, if the pendency of the suit brought in Montana by Harris would defeat this proceeding, a judgment against him in that suit must have the same effect a fortiori.

It remains only to consider if the chose in action sued on by Harris in Montana was there assets of Ingersoll's estate in his hands. Dicey on the Conflict of Laws (Am. Ed.) p. 460. The defendants appeared there, and there carried on the litigation. Some of them were citizens of that state. The proposition has not been disputed in argument, but has been everywhere assumed, and especially by the present complainant, who there began the suit which Harris carried on. Though she did not herself continue the Montana suit, yet, having procured Harris's substitution in her place in the suit which she had begun, she cannot well say that the chose in action had not its situs in Montana and was not assets there.

Most of the cases cited by the defendant and by the learned judge of the court below have been already referred to. The debt of a person deceased, speaking generally, is due and may be sued on wherever his property is found. Every administrator, wherever appointed, is

in privity with his intestate, and so is liable to pay his intestate's debt out of the funds in his hands. Until the debt is discharged, the creditor may sue administrators in as many jurisdictions as he can find them, since the debts of the intestate are owed, and so have their situs, in each and every one of these jurisdictions; but a given article of the testator's property, generally speaking, is not assets everywhere. It is ordinarily limited to a situs in one jurisdiction, and thus passes under the control of a single administrator. Even if its situs be deemed originally indifferent as between two jurisdictions, yet, if it is brought into suit in one of these by an administrator appointed there, the suit is taken to fix its situs and to exclude any other administrator from its control. Sulz v. Mutual Reserve Fund, 145 N. Y. 563, 40 N. E. 242, 28 L. R. A. 379. This is the necessary result of the independence of administrators appointed in different jurisdictions. One cannot sue upon a judgment obtained by another, because administrators have no privity with each other, and every article of their intestate's property belongs to one or another of them independently, without right of interference in the rest. But the inability of one administrator to sue upon a judgment obtained by another does not empower the former to sue upon the original chose in action, which was the basis of the judgment. Debts owed to an intestate are not multiplied by the number of his administrators. There is but one debt, and when it has come into the hands of the appropriate administrator other administrators are excluded from its control. If he reduces it to judgment, it is merged in that judgment, not only in his jurisdiction, but everywhere. Conversely, if he seeks to collect an alleged debt found in his jurisdiction and judgment goes against him, the defendant is everywhere relieved. A judgment for the plaintiff in a given suit is binding only so far as a judgment for the defendant in the same suit has the like effect.

Any other result would be intolerable. Had Harris obtained judgment against these defendants in the Montana suit, he could have sued on it in Massachusetts in his own name, and the Massachusetts administratrix could not have sued on it in her representative capacity. If the complainant's theory is sound, these defendants would then be liable in Massachusetts to two suits at the same time, one brought against them by Harris individually upon the Montana judgment, and another brought against them by Mrs. Ingersoll, as the Massachusetts administratrix, upon the original claim which had been merged in that judgment.

It follows that the matter herein litigated was adjudicated in Montana, inasmuch as the cause of action in the two proceedings was the same, the Montana judgment was rendered on the merits, and was so far between privies that the administratrix in Massachusetts is bound by the judgment rendered against the administrator in Montana.

The decree of the Circuit Court is reversed, and the case is remanded to that court, with directions to dismiss the bill, with costs, and the appellants recover costs of appeal.

ALDRICH, District Judge (dissenting). I cannot agree with the result reached in this case. I do not question, however, the general proposition that a judgment upon the merits by a state court having jurisdiction of the parties and the subject-matter is entitled to full credit, and conclusive as a bar to further litigation in another jurisdiction. This rule unquestionably applies, not only to cases where the judgment is upon actual trial, but to cases heard upon demurrer, going to the merits, and to cases set down for hearing upon bill and answer.

In my view the case under consideration is not fairly in either class, or in any class of cases to which the rule of res judicata applies. It is a fundamental and familiar principle that it is only in cases where it is clearly beyond question that a party's rights have been determined upon the full merits that the rule of res judicata holds good.

The majority opinion accepts the situation as one to be solved as though it were a judgment in a case standing upon general demurrer. I do not think it is at all like that. In a case on general demurrer, the defendant in effect says, take all the plaintiff alleges to be true, still he is not entitled to recover.

In the Montana case the defendants did not and could not stand upon general demurrer, for the reason that the complaint as amended contained general allegations of the plaintiff's rights, which, upon his theory, entitled him to judgment if all alleged was to be accepted as true. This was so because the plaintiff alleged the fact of the contest, which involved vast preparation and a six weeks' jury trial, in which the jury disagreed. He also alleged the compromise in which it was claimed that Col. Ingersoll and the other parties to the contract participated, and which it is alleged was an expedient and effective means adopted by the parties for defeating the substantial provisions of the will, and of giving Col. Ingersoll's clients all and more than they would have received if the contract had been literally and technically fulfilled and the estate administered intestate.

Under these allegations, uninfluenced by the probative force of an answer, the plaintiff might have fairly contended that the contest and the disagreement of the jury at least suspended the probate of the will, and rendered it inoperative as an instrument to pass the property according to its terms, and that his evidence would show that the parties verbally accepted the compromise result in lieu of performance according to the strict letter of the contract.

To all intents and purposes, so far as the interests of those who employed Col. Ingersoll were concerned, the will was defeated because it did not under the compromise operate in any substantial sense according to its terms. Its substantial provisions were defeated.

Where allegations are general in the assertion of a right, it is permissible to explain them by evidence, and, if there is any view upon which the allegations can be accepted as sufficient in law, judgment will not go against the plaintiff upon demurrer.

Although the allegations of a complaint may not show performance strictly like that provided for in the contract, if the allegation is that that kind of a performance was performance under the contract, it necessarily presents a situation to be aided by subsequent pleadings and

by proofs, as, for instance, where it is claimed that the alleged performance was to be accepted and paid for as a better, though technically somewhat different, performance than that contemplated by the original contract. Like a contract to build a house or a bridge according to written specifications, and where the parties by agreement, and in order to meet exigencies developed in the progress of performance, substitute a different way of doing it at and for the contract price. The allegations of performance must be aided in such a case by proofs upon issues properly joined by subsequent pleadings. At all events, the defendants did not demur, but answered, alleging certain facts and setting forth their side of the controversy, and, among other things, they alleged that the consideration for the contract was not truly stated in the complaint; that Col. Ingersoll received $5,000 in full for his services and expenses and in revocation of the contract; that the compromise was not effectual in defeating the will, so far as the rights of Root and the other Ingersoll clients were concerned; that the compromises were negotiated by the parties and counsel other than Ingersoll; and that Col. Ingersoll did not perform any services other than those in assisting in and endeavoring to enforce the contest of Root and others.

To the answers, and upon all these matters, the plaintiff filed a replication, joining issue, and denied that the contract for the $100,000 fee was ever abandoned, and alleged that it was in force and fully performed as alleged.

To the answers, thus raising mixed questions of law and fact as to performance, and as to other aspects of the case, as well as the question of fact as to Col. Ingersoll's service in procuring the compromise, which, it is alleged, was effectual in defeating the will, the plaintiff had the right to reply, and to controvert the various matters alleged therein. United States v. Dalles Military Road Co., 140 U. S. 599, 616, 617, 11 Sup. Ct. 988, 35 L. Ed. 560.

The Montana court ignored the issues raised by the answer and the replication, denied to the plaintiff his right of trial and all opportunity to introduce proofs, and assumed to decide the case upon the bill of complaint, notwithstanding the fact that the bill had been answered and issues joined by replication upon questions of fact and upon mixe[d] questions of law and fact.

It is quite difficult to find warrant for this, or for basing the decision, as was done, upon the ground of mutual abandonment in view of the emphatic allegations of the replication to the contrary effect. This is, however, a question not to be discussed here except so far as it bears upon the question, which we must consider, whether there was a determination of the rights of the parties in Montana upon the full merits.

The case was never set down for determination upon demurrer. The case was never set down for hearing upon bill and answer, nor was it a case where the defendant moved for judgment on all the pleadings. The plaintiff never waived his constitutional right to a trial or his right to introduce proofs, but, on the contrary, insisted upon his rights in that respect. Issues of fact being joined, it was the funda-

mental right of the plaintiff to introduce his proofs, explaining the allegations of performance and his proofs controverting the allegations of the answer.

In Martin v. Texas, 200 U. S. 316, 26 Sup. Ct. 338, 50 L. Ed. 497, the right to introduce proofs in support of a material allegation was recognized as an essential right, and it was there said if the court had refused to admit evidence, or if the opportunity to establish the alleged facts had been denied, the judgment would be reversed.

The state law as applied in the Montana case did not accord to the plaintiff "due process of law." It is said in Howard v. Kentucky, 200 U. S. 164, 173, 26 Sup. Ct. 189, 50 L. Ed. 421, that it may be admitted that the words "due process of law," as used in the fourteenth amendment, protect fundamental rights, and that the inquiry is, did the state law as applied afford due process as those words are used in the fourteenth amendment? Therefore, under the circumstances, it is not so much a question here as to what the Montana law and practice is as whether the kind of a trial had in Montana afforded to the plaintiff the opportunities usually accorded to a party under "due process of law" in courts administering justice and establishing rights according to the general course of law and equity. Still, while saying this, I by no means concede that the Montana law is correctly stated in the majority opinion, or that the Montana Code practice is such as justifies what was done in this case in that state.

The Montana record shows, as will be seen by reference to the statement which precedes the opinion of the Montana Supreme Court, that the case regularly came on for trial in Montana upon the issues raised by the bill and answer, and that the plaintiff offered to introduce proofs in support of his allegations, yet the motion and the order of court, as already pointed out, entirely ignored the issues joined, and denied to the plaintiff the fundamental right of an opportunity to prove his case, which was taken from the jury and judgment rendered therein against him upon the ground that the complaint in the abstract did not state a cause of action.

It is one thing to hold against a plaintiff upon demurrer where the plaintiff after demurrer elects to stand upon his declaration. That is regular and involves "due process of law." It is, however, quite another thing to ignore an answer and the replication and to deny the plaintiff all opportunity of explaining and sustaining his allegations of fact by proofs, or even of explaining and sustaining allegations which involve mixed questions of law and fact. That would not be regular and would not be according to a party "due process of law."

We should assume here that the plaintiff was prepared upon the trial, for which he contended and to which he was entitled under "due process of law," to offer proofs tending to show that Col. Ingersoll, as alleged, advised about and actively participated in the effective and beneficial compromise, and that the substantial defeat of the terms of the will, as the result of the contest, the trial, and the compromise which secured to the Ingersoll clients greater beneficial results than would the technical defeat which it is contended was contemplated by the original

contract, was accepted by the Ingersoll clients in lieu of the kind of a defeat perhaps originally intended, and that his evidence would tend to show that it was a result or a defeat, as in effect alleged in the bill before us, upon which Root and Coram had in interviews and correspondence admitted their indebtedness under the contract.

In that part of the contest involving the preparation and trial Col. Ingersoll performed valuable and effective service—service which left the probate of the will at least suspended. Having incurred expense and so far entered upon performance, his rights under the contract were substantive, and he was entitled to an opportunity to continue the contest to defeat the will. The Montana answer contained an allegation, which was denied by the plaintiff, that the favorable compromise was effected by counsel other than Col. Ingersoll. When and where and upon what trial, pray, was this issue determined upon "due process of law," and upon what process and what trial was it determined that Root and Coram, after part performance and the creation of substantive rights, might compromise and might exercise the right to withdraw from Col. Ingersoll the opportunity to perform the contract according to its terms, and that nonfulfillment of the contract should, under such circumstances, be their defense, which should leave the Ingersoll interests and rights remediless?

The decision of the Montana Supreme Court is grounded upon the idea that duty required Col. Ingersoll to contest, and that the compromise in which he participated created a situation which made performance impossible. In this connection, it is interesting to note that the defendants' answer alleges that Ingersoll did not participate in the compromise, that the parties and other counsel made the compromise without his help or assistance, and thus, if the defendants' allegation be true, the defendants themselves, and not Ingersoll, made strict and literal performance impossible.

The decision also proceeds upon the idea of a mutual arrangement between Col. Ingersoll and his clients, a mutual arrangement which, according to the decision, in effect amounted to an abandonment of the contract. Whether there was a mutual arrangement and abandonment was largely a question of fact, upon which the plaintiff took issue and about which the plaintiff was never heard or allowed to produce his proofs. There was no hint or suggestion in the complaint of an abandonment. The allegations in effect are that the desirable result was reached upon different lines than those contemplated by the contract, and that that was done under an arrangement between the parties.

The very nature of the controversy which involved mixed conditions relating to the question whether there was a substantial defeat of the will; the question of fact whether Col. Ingersoll received $5,000 in full for his services, and whether the contract was abandoned and rescinded, or whether what was done by way of compromise was under an arrangement between the parties with the idea that it was to be accepted in lieu of literal performance and the technical defeat, perhaps, contemplated by the original contract; the question whether the parties acknowledged indebtedness under the contract and agreed to pay—made it peculiarly a case for issues of fact through an answer

and a replication upon which the plaintiff was entitled to such a trial as would allow the questions of fact to be settled under instructions, and, this being denied, it follows that the "due process of law" contemplated by the Constitution was not accorded to him.

I think it quite clear, and so clear that it needs no extended elaboration, that the Montana court had no right to disregard the issues joined and to foreclose the plaintiff's rights upon assumptions of fact, and upon assumptions upon mixed questions of law and fact, which were contrary to the allegations of the complaint upon which issue had been joined.

Moreover, the conclusion is irresistible, upon a critical examination of the reasoning of the Montana Supreme Court, that the court, having denied to the plaintiff the right to be heard upon proofs in support of the allegations of the complaint and in support of his side of the issues raised by the replication, which was a denial of "due process of law," proceeded to determine the rights of the parties under the influence of the probative force of the answer, though the case was never submitted for hearing on bill and answer. I say this because the reasoning of the Montana court is based upon substantial matter contained in the answer, matter contrary to the express allegations of the complaint.

The majority opinion here is based upon the assumption that no evidence consistent with the complaint could have changed the result in Montana, and upon the further assumption that, if the fee was contingent, there was no cause of action. The fundamental error in the Montana judgment, and in the majority opinion here as well, resides in these assumptions in respect to controverted questions involving law and fact, and in deciding against the plaintiff without hearing his evidence. It is plainly deciding against a party without hearing him. How was it possible for the Montana court, without hearing the proofs, to rightfully pass upon the controverted question of waiver of contract, or upon the controverted questions relating to the waiver of the contingency and to the agreement to pay, and how is it possible for this court to rightfully say that no evidence would have changed the result in Montana?

As has already been observed, the subject-matter of the controversy was such that the rights of the parties could not fairly or intelligently be ultimately concluded by a court except upon pleadings and proofs, and upon such a trial as would give the parties an opportunity to be heard, a trial conducted under such conditions as would allow the disputed questions of fact to be determined by the court upon evidence, or by a jury upon evidence under proper instructions to that end. This is so, because under the changed conditions resulting from the admitted departure from the contract in respect to literal performance, and under the issues joined in respect to the circumstances which varied the kind of performance, the situation became such that the rights of the parties could not be ascertained and established, under reasonable rules of interpretation, by taking the contract by its four corners. From the very nature of the resultant situation the plaintiff was entitled under due process and procedure to introduce his explanatory proofs.

It results, therefore, in my view, that the Montana judgment was not based upon such a trial as entitles it to be accepted as conclusive of the merits, and as one which settles the ultimate rights of the parties and becomes a bar to proceedings involving the merits in another jurisdiction.

Judge Putnam, in an elaborate opinion in the Circuit Court (Ingersoll v. Coram [C. C.] 127 Fed. 418; Id., 136 Fed. 689), decided the question of res judicata against the defendants upon an application of the rule that an ancillary administrator in one jurisdiction is not in privity with an ancillary administrator in another jurisdiction, and upon the ground that the parties in this case are not the same as the parties in the Montana case. Holding the view, as I do, that the Montana case was never determined upon its full merits, and that the plaintiff was denied the constitutional right of "due process of law," I have no occasion to discuss that position, and therefore leave that phase of the case upon the reasoning of Judge Putnam and the authorities cited in his opinion in the Circuit Court.

Moreover, and entirely aside from the questions discussed in the majority opinion, there is another phase of the situation which should be taken into consideration. Upon this phase of the case I urge, as strenuously as I properly may, that the Circuit Court should not be directed to dismiss the bill in the equitable proceeding pending here, and it is upon this ground. The Montana Supreme Court, as will be seen by referring to its opinion, only undertook to determine the rights of the parties under the special contract in respect to the contingent fee, expressly leaving open and unadjudicated the quantum meruit rights of the plaintiff to recover for services other than those provided for by the contract. It is clear that the Montana court intended to leave open the question as to the meritorious service, which, though actually performed, did not, according to the views of that court, accomplish the literal defeat of the will; that is to say, that what was done did not amount to the particular performance which in its view was contemplated by the special contract. The services thus referred to were at least substantial. They were services which were potential in staying a verdict sustaining the will, thereby paving the way for the favorable compromises (in which it is alleged Col. Ingersoll participated and about which the issue of fact raised by the pleadings has never been determined), through which, as is claimed, the Ingersoll clients, these defendants, received something like $5,500,000 in money and real estate titles—assets admitted to be in excess of their shares and which were apparently, in fact vastly, in excess—which they would not have received if the will had not been contested and had been probated in its original form and according to its terms. Therefore, if it shall be determined, upon the theory of the majority opinion, that the rights of the parties in respect to the contingent fee under the contract have been concluded by the Montana courts, still the questions relating to the quantum meruit are fairly open, and the plaintiff in this equitable proceeding should be allowed to recast her bill and have the question as to what she ought to recover upon quantum meruit and all questions of lien ascertained and established. That,

at all events, is something which has never been actually determined or adjudicated here or elsewhere. No one pretends that it has. Manifestly, as before pointed out, the reference of the Montana court was to services for which the plaintiff could not, in the view of that court, recover under the contract. Accepting the theory of that court for the purpose of stating the question, the reference was to a service for which Col. Ingersoll, according to the plaintiff's allegation, was never compensated, and this allegation holds for purposes of equitable considerations in respect to an amendment without regard to the question whether the services were under or aside from the contract. If the plaintiff, under the operation of the rule of res judicata, must accept as final the theory of the Montana court that recovery of the contingent fee cannot be had under the contract, then, as an equitable alternative in this equitable proceeding to recover upon a contract and to establish a lien, she should be allowed to turn her bill into an equitable proceeding to recover upon quantum meruit what is right and just for the manifestly important service for which, according to the allegations and the theory of the plaintiff, compensation has never in fact been made. If it shall be determined here that the question of the right to recover under the contract is foreclosed by the Montana judgment, and if, in that event, opportunity is not given in this proceeding to recast the bill and have the value of the professional services actually rendered, ascertained and established, the plaintiff will go hence with an important and at least equitable claim defeated upon the somewhat technical, and under the circumstances inequitable, ground of nonfulfillment of a special contract, and the underlying equitable question as to the value of the services actually performed in respect to the subject-matter of the contract will be wholly unconsidered, and as a result the real value of the alleged meritorious services, in preparation for the contest, upon the trial and in connection with the compromises, through which the enormous financial returns were realized by these defendants, must forever remain untold and unrewarded, and thus the plaintiff will have lost a well-known and familiar equitable right founded upon the principle that, if a laborer labors well and fails to perform the strict letter of the bond, he may still have what his labor merits.

Under all the circumstances, if the Circuit Court is peremptorily directed to dismiss the bill and the plaintiff is turned away under the rule of res judicata drastically founded upon the Montana situation, where the court only pretended to deal with the right of the plaintiff to recover the contingent fee under the special contract, she will not have been accorded the opportunities in this court which modern practice and procedure usually extend to a plaintiff whose case manifestly involves a right, and who, through inadvertence or oversight, has failed in the first instance to place the case upon the right ground. It is for this reason, if the Circuit Court is reversed upon the ground stated in the majority opinion, that the plaintiff should have an opportunity in that court to move to amend her bill.